# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

04-1765

———————

United States of America,

        Appellee,

v.

Arlie Gene Wipf,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the District
\*  of Minnesota.
\*
\*
\*

———————

Submitted: November 19, 2004
Filed:  February 9, 2005

———————

Before MURPHY, LAY, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

Arlie Gene Wipf ("Wipf") was convicted of two counts of involuntary manslaughter in Indian country. The district court[1] sentenced Wipf to twenty-four months' imprisonment. Wipf now appeals. We affirm.

---

[1] The Honorable John R. Tunheim, United States District Court Judge for the District of Minnesota.

## I. Facts

On March 1, 2003, Wipf was driving south on County Road 89 on the Red Lake Indian Reservation in northern Minnesota. There were two passengers in the car, Luana Perkins, the mother of Wipf's two children, and Angel Riviera. The car went off the road onto the shoulder, then returned to the road and slid sideways across the center line where it collided with another vehicle. The collision killed both Perkins and Riviera. The collision also broke the kneecap of Valerie Clark, the driver of the second vehicle. Clark's passenger, Gary Dudley, did not seek medical attention. The road was slippery because of ice and snow on the ground.

After the collision, Wipf was found sitting behind the driver's seat with Perkins seated next to him in the passenger seat. Riviera had been thrown from the car. There was a strong odor of alcohol coming from the vehicle, and beer bottles were scattered on the vehicle's floor. Wipf was taken to the emergency room at North Country Regional Hospital in Bemidji, Minnesota. While Wipf was in the emergency room, FBI Agent Timothy Ball arrived to ask Wipf the names of the two other passengers in the car and to obtain a blood sample. Agent Ball did not have a warrant to obtain the blood sample, and the district court later suppressed the evidence of the blood sample. Medical professionals also withdrew and tested Wipf's blood as part of his medical treatment. Testing of this sample showed that Wipf's blood alcohol level was .214 shortly after the accident. Wipf admits that he consumed alcohol, marijuana, and cocaine during the twenty-four hours prior to the accident.

## II. Procedure

The government filed a three-count Indictment charging Wipf with two counts of involuntary manslaughter in violation of 18 U.S.C. §§ 1112, 1151, and 1153(a) and one count of assault resulting in serious bodily harm in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). After a jury trial, Wipf was convicted of two counts

of involuntary manslaughter and acquitted of the assault charge. The district court sentenced Wipf to twenty-four months' imprisonment to be followed by three years of supervised release. The court also ordered restitution in the amount of $6054.50.

## III. Discussion

### A.    The Jury Instructions

Wipf's first argument on appeal is that the district court erred by refusing to instruct the jury on proximate cause. We review challenges to jury instructions for an abuse of discretion. United States v. Beckman, 222 F.3d 512, 520 (8th Cir. 2000). "'It is not grounds for reversal that the charge might have been differently, or even better, worded; a district court has wide discretion on choice of language, and we will not find that discretion abused when the instructions as a whole accurately and adequately state the relevant law.'" Id. (quoting United States v. Kabat, 797 F.2d 580, 588 (8th Cir. 1986)).

For each count of manslaughter, the court instructed the jury that:

> In order to sustain its burden of proof for the crime of involuntary manslaughter as charged in Count 1 of the indictment, the government must prove the following four essential elements beyond a reasonable doubt:
> One: [The victim] was killed as a result of an act done by the defendant during the commission of an unlawful act not amounting to a felony, namely, driving a vehicle while under the influence of alcohol;
> Two: The defendant knew that his conduct was a threat to the lives of others or knew of circumstances that would reasonably cause him to foresee that such conduct might be a threat to the lives of others;
> Three: The defendant killed Luana Perkins within Indian Country; and
> Four: The defendant is an Indian.

Taken as a whole, the jury instructions in this case accurately represented the law. "There is no requirement that a trial court 'instruct with the specificity or in the language defense counsel desired.'" United States v. Iron Eyes, 367 F.3d 781, 785 (8th Cir. 2004) (quoting United States v. Bartlett, 856 F.2d 1071, 1083 (8th Cir.1988)). Though proximate causation is an element of a crime, there is no requirement that the particular words "proximate cause" appear in the instruction, so long as the concept is made clear to the jury. See United States v. DeCoteau, 516 F.2d 16, 17 (8th Cir. 1975) (instruction in involuntary manslaughter case requiring jury to "find that defendant did commit the crime of the operation of a motor vehicle while under the influence of intoxicating liquor and that the death of [the victim] *resulted* from the commission of this crime" held to adequately convey the concept of proximate cause to the jury). Here, as in DeCoteau, it was sufficient for the court to instruct the jury that the deaths needed to be a result of the defendant's actions.

## B.    Admittance of Medical Evidence

Wipf's second argument on appeal is that the district court erred when it admitted medical record evidence that included Wipf's blood alcohol level. "We afford great deference to the district court's evidentiary rulings, reversing only where there has been a clear abuse of discretion." United States v. Briley, 319 F.3d 360, 363 (8th Cir. 2003).

Relevant evidence is evidence that tends to show that any fact of consequence in the action is more or less probable. Fed. R. Evid. 401. Subject to certain exceptions, relevant evidence is admissible. Fed. R. Evid. 402. One of these exceptions is that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "However, evidence is not unfairly prejudicial merely because it hurts a party's case." United States v. Emeron Taken Alive, 262 F.3d 711, 714 (8th Cir. 2001). "[R]ather, evidence is unfairly prejudicial when it would influence the jury to decide the case on an improper basis." Cummings v. Malone, 995 F.2d 817, 824 (8th Cir. 1993).

Here, medical professionals drew Wipf's blood in the course of his treatment. This sample indicated that Wipf's blood alcohol level was .214 shortly after the accident. At trial, this evidence was both relevant and prejudicial, but was not unfairly prejudicial. To convict Wipf of involuntary manslaughter, the jury was required to find Wipf caused the death of the victims "during the commission of an unlawful act not amounting to a felony, namely, driving a vehicle while under the influence of alcohol." The evidence of Wipf's blood alcohol content of .214 tended to show that he was driving under the influence of alcohol, and was thus relevant to the jury's determination. The level of alcohol in Wipf's blood was certainly prejudicial because it was strong evidence that he committed the crime of involuntary manslaughter. However, the evidence was not unfairly prejudicial because it would not lead the jury to find Wipf guilty on an "improper basis." On the contrary, it would lead the jury to find Wipf guilty in part because he caused the victims' deaths while driving under the influence of alcohol. This is a proper use of the blood alcohol content evidence.

Wipf contends that this evidence should not have been allowed, apparently because different evidence tending to prove the same fact was suppressed. This argument is without support in our authority. While Agent Ball obtained a blood sample without a warrant which was later suppressed, this fact has no bearing on the independently drawn sample taken for medical purposes. Hospital staff did not need probable cause to draw the sample, and the results of tests of the sample were properly part of Wipf's medical records. Wipf fails to point out anything that protects the blood alcohol information generated by the hospital from admission. See In re Hoare, 155 F.3d 937, 938-39 (8th Cir. 1998) (assuming blood sample taken by hospital personnel in the course of treatment admissible).

## C.     Refusal to Continue

Wipf's third argument on appeal is that the district court erred when it failed to continue the trial date after the government disclosed new evidence on the eve of

trial. Apparently, the government sent Wipf a police department incident report and statements by police officers and criminal investigators one week before trial. Wipf contends that this was not enough time to properly analyze the evidence. Wipf asserts that he is entitled to relief under Fed. R. Crim. P. 16, which lays out the government's disclosure requirements. However, under Rule 16, "reports, memoranda, or other internal government documents" created by a government agent in connection with the investigation or prosecution of the case are immune from discovery. Fed. R. Crim. P. 16(a)(2); see also United States v. Roach, 28 F.3d 729, 734 (8th Cir. 1994). Therefore, the claim that the documents were produced late is without merit and the failure of the district court to continue Wipf's trial was not an abuse of discretion. United States v. Vesey, 330 F.3d 1070, 1071-72 (8th Cir. 2003) (standard of review).

## D.    Sufficiency of the Evidence

Wipf's final argument on appeal is that the evidence was insufficient to sustain the conviction. "We review de novo the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the verdict." United States v. Martin, 369 F.3d 1046, 1059 (8th Cir. 2004). Wipf contends that the government failed to prove that his actions caused the death of the victims. Wipf asserts that evidence of weather conditions and the construction of the road and shoulder created a reasonable doubt that his actions were the cause of the deaths.

The jury had the opportunity to hear testimony on other possible causes of the accident. Indeed, Wipf presented expert testimony on the weather, road conditions, and the construction of the road and shoulder in order to mitigate against the evidence that he caused the accident. The jury also heard evidence that Wipf was driving and that his blood alcohol content was .214. Taking the evidence in the light most favorable to the verdict, there was more than enough evidence to find, as the jury did, that Wipf caused the deaths of Perkins and Riviera while driving under the influence of alcohol.

## IV. Conclusion

For the above reasons, the judgment of the district court is affirmed.

_____