# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
March 5, 2010

No. 08-51299

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RAVIS NEAL KEY, II,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:08-CR-123-ALL

Before JONES, Chief Judge, and SMITH and DEMOSS, Circuit Judges.

EDITH H. JONES, Chief Judge:

Ravis Neal Key, after ingesting a cornucopia of intoxicating drugs, crashed a car into a vehicle driven by Sergeant Andre M. Araujo, who died as a result. Key pled guilty to intoxication manslaughter and now challenges his 216-month sentence, contending that the sentencing court failed to adequately explain its reasons for imposing an above-guidelines sentence and that the sentence is, in itself, substantively unreasonable. Finding no sentencing error, we affirm. We

No. 08-51299

also hold that the Texas offense of intoxication manslaughter was properly assimilated as the crime of conviction.

## I. BACKGROUND

On the morning of Monday, June 30, 2008, Ravis Key awoke in the driver's seat of a borrowed car. The aftereffects of the drugs and alcohol he had consumed with friends the previous night lingered, but he felt sober enough to drive home. Shortly thereafter, he approached the intersection of Tank Destroyer Boulevard and Clarke Road, which is located within the Fort Hood Military Reservation. Sergeant Andre M. Araujo's vehicle was stopped at the red light in Key's lane of traffic. Key's car collided with Araujo's at 75 miles per hour. Key did not brake; his vehicle left no skid marks. Araujo's car was propelled into the intersection, where it was struck by another vehicle and caught fire. Sergeant Araujo died from the massive head injury he received in the collisions.

Key appeared intoxicated to the military police who arrived at the accident scene. Tests revealed that his blood contained cocaine, methylenedioxymethamphetamine (MDMA), benzodiazepines, amphetamines, and cannabinoids (marijuana). Approximately three to five grams of cocaine were found in Key's vehicle. The federal government charged Key with driving a motor vehicle in a public place while intoxicated, and by reason of that intoxication causing Sergeant Araujo's death, in violation of Tex. Penal Code

§ 49.08 ("Intoxication Manslaughter"), assimilated through the Assimilative Crimes Act, 18 U.S.C. § 13. Key pled guilty, without a plea agreement. The state offense carries a maximum penalty of 20 years in prison. Tex. Penal Code § 12.33(a).

The pre-sentence report concluded that the most analogous federal sentencing guideline to the offense of conviction was that for involuntary manslaughter. *See* U.S.S.G. §§ 2X5.1, 2A1.4 (2008). Pursuant to that guideline, Key's base offense level was 22 because his "offense involved the reckless operation of a means of transportation," *id.*, but the department subtracted three offense levels for acceptance of responsibility. Key's criminal history—including one conviction of evading arrest with a vehicle, two convictions of evading arrest, and two convictions of burglary of a vehicle—resulted in a score of nine and a criminal history category of IV. Based on these factors, the guidelines range of imprisonment was from 46 to 57 months.

The pre-sentence report proposed an upward variance based upon the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a). Key had made a conscious decision to drive the vehicle, knowing that he was still under the influence of drugs. Further, he had admitted daily use of cocaine, beginning in early 2008, and of marijuana, beginning in early 2005.

3

Therefore, he had undoubtedly operated a motor vehicle under the influence of dangerous drugs before committing the instant offense. For these reasons, the department urged the district court to consider a variance and sentence Key to a term of imprisonment that was "significantly higher than the established guidelines range."

Key objected that a variance was not warranted. The guidelines sentence, he argued, considered the consumption of intoxicants, driving a vehicle, and the accidental death of an individual. He also claimed that the PSR did not adequately reflect his profound regret for causing Sergeant Araujo's death. In addition, Key asserted that lack of sleep, not just intoxication, was a factor in the accident.

The government, in turn, advocated a non-guidelines sentence that was "close to" the 20-year statutory maximum. In support of this argument, it related the extreme "nature and circumstances of the offense," as well as the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). According to testimony, Key had borrowed the vehicle in exchange for cocaine, an arrangement that the government characterized as a "crack rental." It also argued that § 2A1.4, the guideline that determined Key's base offense level, encompasses a broad array of conduct and includes crimes that do not involve intoxication. The guideline applies to conduct that is minor when compared to Key's conduct, such as when a sober person drives recklessly. Because so many

4

No. 08-51299

scenarios could be considered "reckless," the base offense level of 22 did not adequately account for Key's conduct, which involved multiple controlled substances, excessive speed, and a collision without braking into a person who was stopped at a red light. The government further argued that it was hard to imagine a greater disregard for human life than Key's and asserted that, in such a situation, the defendant would likely be charged with second-degree murder.

The government also stated that a greater sentence was necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). First, a longer sentence would be commensurate with the seriousness of the offense. Second, it was necessary to promote respect for the law and deterrence of criminal conduct, given the nature of the offense and Key's criminal record. Third, it would provide just punishment in light of the offense's tragic impact on the victim and his family. Fourth, the purpose of "protect[ing] the public from further crimes of the defendant," § 3553(a)(2)(C), warranted a significant variance from the guidelines range because the instant offense, and several of Key's prior offenses, threatened public safety.

Finally, the government argued that a lengthy sentence would avoid sentencing disparities.

The district court agreed with the government and imposed a sentence of 216 months of imprisonment, far above the guidelines range and slightly below the statutory maximum. The court explained that the guidelines range was

5

No. 08-51299

"completely inadequate" to achieve the purposes of § 3553(a), and it explicitly adopted the government's argument in support of the sentence. It elaborated on its rationale in a written Statement of Reasons explaining its imposition of a sentence outside the guidelines range.

Key objected to the sentence as unreasonable and has now timely appealed.

## II. STANDARD OF REVIEW

In general, this court reviews a district court's sentencing decision under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). Further, "Appellate review is highly deferential as the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant." *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008). When an objection has not been raised below, however, plain-error review governs that issue. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009), *cert. denied* (October 5, 2009) (No. 08-11099). A plain error is one that is clear or obvious and that affects the party's substantial rights. *United States v. Baker*, 538 F.3d 324, 332 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 962 (2009). This court will correct plain errors only if they seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.*

## III.  DISCUSSION

On appeal, Key raises two issues.  First, he argues that the district court committed procedural error by failing to adequately explain its reasons for imposing a non-guidelines sentence.  Second, he challenges the sentence itself as substantively unreasonable.  In addition, at the request of this court, the parties briefed a third issue, whether the Texas offense of Intoxicated Manslaughter was properly assimilated under the Assimilative Crimes Act.  We address each issue in turn.

### A.  Procedural Error

Key complains that the district court committed a significant procedural error by failing adequately to consider the policy factors enumerated in 18 U.S.C. § 3553(a) and document its reasoning for imposing a non-guidelines sentence, as required by § 3553(c).  Because Key did not raise this objection before the district court, it is subject to plain error review. *Puckett v. United States*, ___ U.S. ___, 129 S. Ct. 1423, 1429 (2009).

Section 3553(c) states that the district court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence . . . (2) is not of the kind, or is outside the [Guidelines range], the specific reason for the imposition of a sentence different from that described." The district court's statement of "reasons should be fact-specific and consistent with the sentencing factors enumerated in § 3553(a)." *United States v. Smith*,

440 F.3d 704, 707 (5th Cir. 2006). The court's justification for a particular sentence must be sufficient "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50, 128 S. Ct. at 597. Moreover, where a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance . . . . [A] major departure should be supported by a more significant justification than a minor one." *Id.*

Key's argument fails at the first step of plain error review: there was no error. This court has held that a sentencing court may incorporate into its statement of reasoning the arguments of the parties before it. In *Bonilla*, we considered a challenge to a sentencing court's justification for a sentence. While recommending that a district court state its reasons "explicitly on the record," we held that there is no error when "[e]xamining the full sentencing record reveals the district court's reasons for the chosen sentence and allows for effective review by this court." *United States v. Bonilla*, 524 F.3d 647, 658 (5th Cir. 2008). Because the § 3553(a) factors were fully addressed at sentencing and in briefing, the district court's reference to "arguments made earlier" and "information in the [pre-sentence] report" was "adequa[te] as a matter of law." *Id.* at 659.

In the present case, the government's sentencing argument, which was explicitly adopted by the district court, exhaustively discussed the § 3553(a) factors. One by one, it ticked off the factors, explaining how each counsels an above-guidelines sentence. This recitation goes well beyond what is required by the law. An "adequate statement" of reasons is sufficient, *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005); a "robotic incantation[] that each statutory factor has been considered" is unnecessary. *Smith*, 440 F.3d at 707 (internal quotation marks omitted). Even if the magnitude of the departure from the guidelines required a "more compelling" justification than in the average case, it has surely been provided.

The district court therefore committed no procedural error in adopting the government's legally adequate sentencing argument.

## B. Substantive Unreasonableness

Key next contends that his sentence of 216 months of imprisonment, when compared to the guidelines range of 46 to 57 months, is substantively unreasonable. Specifically, he argues that the district court relied impermissibly on enhancing factors that are already incorporated into the guidelines; the factors cited by the government did not justify the sentence that was imposed in this case; and his sentence exceeds the sentences of other, similarly situated defendants. We review for abuse of discretion.

No. 08-51299

In reviewing a non-guidelines sentence for substantive unreasonableness, the court will "consider the 'totality of the circumstances, including the extent of any variance from the Guidelines range.'" *Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (quoting *Gall*, 552 U.S. at 51, 128 S. Ct. at 597). We must also review whether the § 3553(a) factors support the sentence. *See id.* at 350. This inquiry, however, must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51, 128 S. Ct. at 597.

First, Key's argument that the district court could not rely on factors already encompassed within the guidelines to support a non-guidelines sentence is foreclosed. *Brantley*, 537 F.3d at 350. Though this court had held otherwise in the past, the Supreme Court's rulings in *Gall*, 128 U.S. at 49–50, 128 S. Ct. at 596–97, and *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), abrogated those earlier cases. *United States v. Williams*, 517 F.3d 801, 809 (5th Cir. 2008). Therefore, giving extra weight to circumstances already incorporated in the guidelines, such as the death of Sergeant Araujo, is within the discretion of the sentencing court.

Second, the district court's rationale provides sufficient justification for the sentence imposed. As discussed above, the court adopted the government's argument in favor of a sentence near the statutory maximum for the offense, and that argument carefully applied the § 3553(a) factors to the facts of the case.

10

No. 08-51299

The government and, by extension, the court relied particularly on the extreme nature and circumstances of the offense, the defendant's criminal history, and the need for just punishment. The undisputed facts – Key's extreme recklessness, his criminal record, his rampant drug use – and the consequences of his acts all support the court's upward departure from the guidelines range.

Further, the district court and this court take seriously the government's argument that Key's conduct may have been so reckless and careless as to demonstrate a complete lack of regard for human life, and that he may have been charged with second degree murder. Although that offense was not charged, the possibility speaks to the gravity of the offense and the inappropriateness of a guidelines range that would apply equally to conduct that is far less reckless. It is reasonable to punish Key's offense more harshly than run-of-the-mill involuntary manslaughter, such as might be committed by a distracted, but not intoxicated, driver.

Third, disparity in sentencing, standing alone, is insufficient to render a sentence substantively unreasonable. Like the other § 3553(a) factors, it must be considered as part of the totality of the circumstances. The sentencing court is directed to "make an individualized assessment based on the facts presented," with respect to each defendant in each case. *Gall*, 552 U.S. at 50, 128 S. Ct. at 597. An argument premised solely or primarily on disparity necessarily negates this command, asking the sentencing court to look to others rather than the

11

No. 08-51299

defendant standing before it.    Further, this argument overlooks that disproportionate offenses may warrant disproportionate sentences; these would evince, by definition, disparity.  Under *Gall*, however, they would not necessarily be impermissible.  *Id.* at 52, 128 S. Ct. at 598 n.8 (explaining that the abuse of discretion standard "balance[s] the need to 'reduce unjustified disparities' across the Nation and 'consider every convicted person as an individual.'").[1]

Considering the totality of the circumstances, the sentence is not so disproportionate as to overcome the weight of the factors in its favor.  The appellant cites cases concerning "similar" offenses, all but one decided before the Supreme Court rendered the Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).  Imprisonment in those cases ranged from 24 to 120 months.  Any disparity vanishes, however, when Key's sentence is compared to others imposed for Intoxication Manslaughter under Texas law.  Similar offenses yielded sentences ranging from 8 to 20 years of imprisonment, and offenders with prior felonies received sentences as high as life imprisonment.  *See McKenzie v. Texas*, 2005 WL 283596 (Tex.App.-Eastland 2005, no writ) (unpublished) (8 years); *Ruiz v. Texas*, 2005 WL 2469659 (Tex.App.-El Paso 2005, no writ) (unpublished) (20 years); *Williams v.*

---

[1] In addition, arguments premised on proportion—*e.g.*, that a sentence is some multiple of the upper end of the guidelines range—suffer a similarly fundamental infirmity, asking the court to accord the guidelines greater deference than the law permits. *Gall v. United States*, 552 U.S. at 51, 128 S. Ct. at 597 (2007) ( "if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness.").

12

No. 08-51299

*Quarterman*, 2007 WL 4547847 (N.D. Tex. 2007) (unpublished) (life imprisonment).  If there is a disparity in Key's sentence, it is not great and represents a not-unreasonable balancing of the § 3553(a) factors, thereby reflecting the severity of the offense and history of the defendant.

The district court did not abuse its discretion in sentencing Key to an above-guidelines sentence.

## C. Assimilative Crimes Act

At the request of this court, the parties also briefed an additional issue: whether the Texas offense of Intoxication Manslaughter was properly assimilated into federal law under the Assimilative Crimes Act ("ACA").

Under what review standard this court should address the ACA is the parties' first point of dispute.  The government argues that, because this issue was neither raised below nor briefed in this court, it is either foreclosed or subject to review for plain error.  Key, however, asserts that the issue is jurisdictional and subject to de novo review.  The single precedent that Key cites, *United States v. Perez*, 956 F.2d 1098 (11th Cir. 1992), accepts without comment the appellants' description of the propriety of assimilation as a "jurisdictional" issue.  The Third Circuit, however, carefully addressed an assimilation issue, finding it analogous to the citation of an incorrect statute in an indictment.  Such an error is not reversible unless a defendant was misled to his prejudice.  *See* FED. R. CRIM. PROC. 7(c)(3).  *United States v. Hall*, 979 F.2d 320, 322-23 (3rd

13

No. 08-51299

Cir. 1992). If the error were jurisdictional, the harmless error standard could not have applied. The nonjurisdictional character of any assimilation error is reinforced, if not directly ruled on, by the Supreme Court's disposition in *Lewis*, which merely reversed and remanded for resentencing after the Court found an improper assimilation. *Lewis v. United States*, 523 U.S. 155, 172–73, 118 S. Ct. 1135, 1145 (1998). Following these two compelling precedents, and Key's own concession that he seeks remand for resentencing, we treat this issue under a plain error standard.[2]

Plain error review in this case ends at the first step. Texas's intoxication assault statute was properly assimilated.

The ACA, in relevant portion, provides as follows:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13. Section 7 of Title 18 provides, *inter alia*, that "lands reserved or acquired for the use of the United States," such as the Fort Hood military

---

[2] A good argument can be made that because the defendant never challenged application of the Texas Intoxication Manslaughter statute in the district court or this court, any error was waived and foreclosed from appellate review. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc); *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000). In any event, the ACA issue yields Key no relief.

14

reservation, are within the "special maritime and territorial jurisdiction of the United States" and so subject to the ACA.

According to the Supreme Court, the words of this statute are not to be taken literally; that is, the fact that conduct could be charged under *some* federal statute does not necessarily prevent assimilation of a state offense. *Lewis,* 523 U.S. at 159–160, 118 S. Ct. at 1139 (1998). Rather, even if conduct is punishable by some federal offense,

> the court must ask the further question whether the federal statutes that apply to the 'act or omission' preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

*Id.* at 164, 118 S. Ct. at 1141 (citations omitted). To defeat assimilation, this test does not require the state and federal offenses to consist of the same "precise acts." *Id.* at 163–64, 118 S. Ct. at 1141. It is more nuanced, in large part because its touchstone is congressional intent: "Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Id.* at 166, 118 S. Ct. at 1142.

In *Lewis*, the defendants were charged with and convicted of first-degree murder under Louisiana law, assimilated through the ACA, for the beating and murder of their four-year-old daughter while on an army base. The government argued that Louisiana's first-degree murder statute and the federal murder

statute covered different forms of behavior, with the state offense focused on a narrower range of conduct. Specifically, the state law elevated to first-degree status, and thus harsher punishment, murder "[w]hen the offender has the specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve." The federal law, while defining first-degree murder in specific terms, lacked any provision concerning the age of the victim. The two offenses, argued the government, did not cover the same act or omission; the state law, unlike the federal offense, was in part a child protection statute. Therefore, the state offense could be assimilated. *Id*. at 169, 118 S. Ct. at 1143.

The Supreme Court disagreed. It explained that, in the usual case, a state offense that "focuses upon a narrower (and different) range of conduct" than the federal offense "argues in favor of assimilation." But certain features of the federal murder statute overcame this presumption. First, it was extremely detailed, drawing a careful distinction between first- and second-degree offenses and providing for an "extreme breadth of the possible sentences, ranging all the way from any term of years, to death." For this reason alone, "There is no gap for Louisiana's statute to fill." *Id*. at 169, 118 S. Ct. at 1143–44.

Second, Congress had amended the federal murder statute several times, reflecting "a considered legislative judgment" about the punishment of murder in federal enclaves. And "where offenses have been specifically defined by Congress and the public has been guided by such definitions for many years, it

16

No. 08-51299

is unusual for Congress through general legislation like the ACA to amend such definitions or the punishments prescribed for such offenses, without making clear its intent to do so." *Id*. at 170, 118 S. Ct. at 1144 (internal quotation marks and citation omitted).

A third consideration was legislative history. In drafting and amending the ACA, Congress had repeatedly referred to murder as "an example of a crime covered by, not as an example of a gap in, federal law." *Id*. at 170–71, 118 S. Ct. at 1144. Finally, the Court noted that it had been unable to find a single reported case in which a state murder statute was assimilated under the ACA.

For these reasons, the Court held the Louisiana statute improperly assimilated and remanded the case for resentencing under the sentencing guidelines applicable to second-degree murder.

The Texas statute at issue provides, in relevant portion:

(a) A person commits an offense if the person:

> (1) operates a motor vehicle in a public place, operates an aircraft, a watercraft, or an amusement ride, or assembles a mobile amusement ride; and

> (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.

Tex. Penal Code § 49.08. This is essentially a strict liability offense.

Key points to the federal offense of involuntary manslaughter as precluding assimilation of the Texas statute:

17

No. 08-51299

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

> Voluntary—Upon a sudden quarrel or heat of passion.

> Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

18 U.S.C. § 1112. Unlike the Texas offense, the federal offense requires either a predicate crime or a showing of recklessness. *See, e.g., United States v. Fesler*, 781 F.2d 384, 393 (5th Cir. 1986).

*Lewis's* first prong is met. Because Key killed Sgt. Araujo in the course of committing the crime of driving while intoxicated, Key's conduct falls within the broad purview of 18 U.S.C. § 1112. But this does not end the matter under *Lewis*. We must move to *Lewis*'s second prong and consider whether § 1112 precludes application of the Texas Intoxication Manslaughter statute. Based on the factors discussed in *Lewis* as bearing on this prong, we conclude the state statute was properly assimilated.

That the Texas statute focuses on a far narrower range of conduct than the federal offense argues in favor of incorporation. Intoxication Manslaughter is a public safety offense, located in Title 10 ("Offenses Against Public Health, Safety, and Morals") of the Texas Penal Code, rather than Title 9 ("Offenses against Public Order and Decency"). The offense covers a quite specific range of conduct: intoxication during the use of a conveyance that results in death. The

18

federal offense, in contrast, lacks detail and is extremely broad in scope, restating common law manslaughter. Thus, any killing that occurs while the defendant is committing a non-felonious crime, or any act committed "without due caution and circumspection" that results in a death may be charged as involuntary manslaughter. To be sure, within this range of conduct is most drunk driving that causes death, but also a near-infinite number of other acts or omissions resulting in death: grossly negligent captaining of a vessel, *United States v. LaBrecque*, 419 F. Supp. 430, 438 (D. N.J. 1976), driving on the wrong side of a highway, *United States v. Pardee*, 368 F.2d 368, 375 (4th Cir. 1966), neglect of duty by a railroad switch-tender, *New Jersey v. O'Brien*, 32 N.J.L. 169 (N.J. 1867), improper design of a building, *New Jersey v. Ireland*, 20 A.2d 69, 70 (N.J. Sup. 1941), and overcrowding of a nightclub, *Massachusetts v. Welansky*, 55 N.E.2d 902, 912 (Mass. 1944). It is plain that the federal and state offenses cover entirely different forms of behavior.

There is also no evidence that Congress intended for an offense such as Key's to be within the exclusive purview of the federal involuntary manslaughter offense. The statute was derived from the common law by the first Congress and has not been altered in words for at least a century, Pub. L. No. 60-350, 35 Stat. 1143 (1909), and in substance since its initial enactment. 1 Stat 112, 113 (1790); Pub. L. No. 80-772, 62 Stat. 683, 756 (1948) (present codification); *see* 18 U.S.C. § 453 (1940) (tracing the derivation of the offense). It is fair to say

No. 08-51299

that Congress has given little consideration to tailoring this offense to specific forms of conduct. Unlike the statute at issue in *Lewis*, it does not carve out particular categories, vary punishment by type of violation, or distinguish among different levels of culpability. There is no risk, then, that assimilation of the Texas offense would "effectively rewrite an offense definition that Congress carefully considered." *Lewis*, 523 U.S. at 164, 118 S. Ct. at 1141. And the statutory text indicates no "intent to occupy so much of a field as would exclude the use of the particular state statute at issue." *Id.*

Quite the opposite. The second subsection of the ACA contemplates assimilation of state offenses for "operating a motor vehicle under the influence of a drug or alcohol," clarifying the application of penalties under state law 18 U.S.C. § 13(b)(1).[3] The statute also contemplates the assimilation of such

---

[3] Subsection (b) of § 13 states:
(1) Subject to paragraph (2) . . . , that which may or shall be imposed through judicial or administrative action under the law of a [State] for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law. Any limitation on the right or privilege to operate a motor vehicle imposed under this subsection shall apply only to the special maritime and territorial jurisdiction of the United States.
(2)
> (A) In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a [State], the punishment for such an offense under this section shall include an additional term of imprisonment of not more than 1 year, or if serious bodily injury of a minor is caused, not more than 5 years, or if death of a minor is caused, not more than 10 years, and an additional fine under this title, or both, if—
>> (i) a minor (other than the offender) was present in the motor vehicle when the offense was committed; and
>> (ii) the law of the [State] in which the offense occurred does not provide an additional term of imprisonment under the circumstances described in clause (i).

20

No. 08-51299

offenses that result in the "serious bodily injury" or death of a minor. 18 U.S.C. § 13(b)(2). Further, the ACA imposes additional penalties in DWI cases, when a minor is present or the victim is a minor, if the state offense does not provide for an additional term of imprisonment. 18 U.S.C. § 13(b)(2)(ii). This demonstrates that Congress intended the assimilation of state criminal offenses concerning driving while intoxicated and that its intention extends to cases in which death results. Far from interfering with a federal policy, assimilating Texas's law furthers an explicit federal policy imposing greater penalties for this type of misconduct. Because the text of the statute is clear in this regard, repairing to legislative history would be unnecessary and improper.

Despite these indications favoring assimilation of Intoxication Manslaughter, the appellant has cited a number of cases in which drunken driving was prosecuted under § 1112 when fatal accidents occurred.[4] Some of these cases predate *Lewis*; none discusses the propriety of assimilating an intoxication manslaughter statute like that of Texas. No doubt defendants would have no incentive to invoke sterner state statutes. We do not regard the unexamined resort to § 1112, without assimilation, as dictating the result here.

---

[4] *See, e.g., United States v. Jones*, 332 F.3d 1294 (10th Cir. 2003); *United States v. Kathman*, 490 F.3d 520 (6th Cir. 2007); *United States v. Wipf*, 397 F.3d 632 (8th Cir. 2005); *United States v. Pettigrew*, 468 F.3d 626 (10th Cir. 2006); *United States v. Eagle*, 498 F.3d 885 (8th Cir. 2007); *United States v. Goings*, 200 F.3d 539 (8th Cir. 2000); *United States v. Bedonie*, 413 F.3d 1126 (10th Cir. 2005). *But cf. United States v. Calbat*, 266 F.3d 358, 362 (5th Cir. 2001) (drunk driving that resulted in severe injury was charged as "intoxication assault" under assimilated Texas law); *United States v. Sasnett*, 925 F.2d 392 (11th Cir. 1991) (drunk driving that caused a death was charged as "DUI manslaughter" under assimilated Florida law).

21

No. 08-51299

Because the Texas offense of Intoxication Manslaughter was properly assimilated, no error, much less plain error, occurred.

## IV. CONCLUSION

For the reasons discussed above, the conviction and sentence of Ravis Neal Key, II, are **AFFIRMED**.

No. 08-51299

DeMOSS, Circuit Judge, Dissenting:

With respect for the position stated by my colleagues in the majority opinion, I find myself in fundamental disagreement with their resolution of whether Texas Penal Code § 49.08, Intoxication Manslaughter (the "Texas statute"), was properly assimilated under 18 U.S.C. § 13(a), the Assimilated Crimes Act ("ACA").

I.

The ACA makes punishable an act committed on a federal enclave that, "*although not made punishable by any enactment of Congress*, would be punishable if committed . . . within the jurisdiction of the State [the enclave] is situated."  18 U.S.C. § 13(a) (emphasis added).[1]  The ACA's basic purpose is "to fill in gaps in federal law where Congress has not defined the missing offenses." *Lewis v. United States*, 523 U.S. 155, 160 (1998) (quoting *Williams v. United States*, 327 U.S. 711, 718-19 (1946)) (internal marks omitted).

In 1998, the Supreme Court developed a basic framework to determine whether a state crime could be assimilated under the ACA.  *See id.* at 164. Under that framework, the court must first ask: "Is the defendant's 'act or omission . . . made punishable by *any* enactment of Congress.'"  *Id.*  (quoting 18 U.S.C. § 13(a)) (emphasis in original).  Ordinarily, if the answer is "no," the state statute may be assimilated.  *Id.*  If the answer is "yes," the court must then ask "whether the federal statutes that apply to the 'act or omission' preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue."  *Id.* at 164-165 (internal

---

[1] The italicized portion of this statute is, in my view, a precondition that should be addressed first in the process of deciding assimilation.

23

No. 08-51299

citations omitted). If the federal statute precludes application of the state law, the state crime cannot be assimilated. *Id.* Because the federal statute precludes application of the state law, I believe there is no "gap" in federal law for the Texas statute to fill.

A.

The first question under the Court's framework is whether Key's actions on June 30, 2008, are punishable under any enactment of Congress. I believe they are. Title 18 U.S.C. § 1112 makes punishable the act of causing a death while in "the commission of an unlawful act not amounting to a felony," otherwise known as misdemeanor involuntary manslaughter. On June 30, 2008, Key drove while intoxicated—a misdemeanor under Texas law. *See* TEX. PENAL CODE ANN. § 49.04 (Vernons 2003). During the commission of the misdemeanor, Key caused the death of Sergeant Andre Araujo, and thus committed the federal offense of involuntary manslaughter. This conduct has been routinely prosecuted under § 1112. *See, e.g., United States v. Lente*, 323 F. App'x 698, 699 (10th Cir. 2009) (invoking New Mexico's misdemeanor offense of driving while under the influence as the predicate unlawful act); *United States v. Kathman*, 490 F.3d 520, 522 (6th Cir. 2007) (same, invoking Kentucky's law); *United States v. Wipf*, 397 F.3d 632, 635 (8th Cir. 2005) (requiring the jury to find that the defendant was driving a vehicle under the influence of alcohol as the predicate unlawful act); *United States v. Dye*, 7 F.3d 227, at *1 (4th Cir. 1993) (unpublished) (invoking the Code of Federal Regulations' "operating under the influence of alcohol" offense, which applies in national parks, as the predicate unlawful act).[2]

---

[2] In addition to the above cited cases, there have been many other pre- and post-*Lewis* cases where § 1112 was charged to punish involuntary manslaughter occurring on an Indian reservation as a result of driving while intoxicated.

24

No. 08-51299

The United States Sentencing Guidelines Manual ("U.S.S.G.") § 2A1.4 (2007) also indicates that such conduct would be punished under § 1112. Section 2A1.4(a)(2)(B) provides a base offense level of 22 if the offense of involuntary manslaughter "involved the reckless operation of a means of transportation." The commentary provides that "'[r]eckless' includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112. A homicide resulting from driving a means of transportation, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless." *Id.* at § 2A1.4 cmt. n.1.

## B.

Because Key's actions are punishable under a Congressional enactment, the next question is whether the federal involuntary manslaughter statute precludes the application of the Texas statute. I believe it does, because the assimilation of the Texas statute would interfere with the achievement of federal policy.

The ACA does not assimilate crimes "where both state and federal statutes seek to punish approximately the same wrongful behavior–where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment." *Lewis*, 523 U.S. at 165.[3] Here, both statutes seek to punish approximately the same wrongful behavior. The federal statute seeks to punish an individual for causing the death of another while in "the commission of an unlawful act not amounting to a felony." 18 U.S.C. § 1112(a). Likewise, the Texas statute seeks to punish an individual for causing the death of another while in the commission of a misdemeanor, albeit the

---

[3] In my opinion, the statutes are approximately the same: 1) they are modern day versions of the common law offense of involuntary manslaughter; 2) they are felony offenses; and 3) neither statute requires a specific criminal intent.

specific misdemeanor of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.08(a). Because the ACA was designed to assimilate state crimes where federal statutes did not provide for the punishment of the offense, state statutes, like the Texas Intoxication Manslaughter statute, that merely penalize one specific way to violate a federal statute should not be assimilated.

There is no gap in federal law for the Texas statute to fill. In my opinion, the only reason to prosecute Key under the ACA instead of § 1112 was to increase the maximum statutory sentence for the offense. The Texas statute carries a maximum statutory sentence of twenty years, whereas Congress has limited the maximum sentence under § 1112 to eight years. *See* TEX. PENAL CODE ANN. §§ 12.33(a), 49.08(b); 18 U.S.C. § 1112(b). In 2007, Congress considered increasing the punishment for involuntary manslaughter to ten years but ultimately decided eight years was the appropriate maximum for such conduct. *Compare* H.R. 660, 110th Cong. § 207 (as introduced in House Jan. 24, 2007)*, with* H.R. 660, 110th Cong. § 207 (2007) (as enacted). In my view, setting the statutory maximum for any crime is exclusively a legislative function, and the executive and judicial branches of our government should not attempt to bypass or change that legislative decision. Assimilating the Texas statute would work to bypass Congress's recent decision to limit the statutory maximum for Key's conduct to eight years and would thus be inconsistent with congressional policy.

The legislative history to the recent amendment to 18 U.S.C. § 1112 also demonstrates that Congress intended to punish such conduct under § 1112. Congress passed the Court Security Improvement Act of 2007, which increased the statutory maximum for involuntary manslaughter from six years to eight. H.R. 660, 110th Cong. § 207 (2007) (enacted). An indication as to why Congress increased the statutory maximum came from a statement by Senator John Kyl

to the Senate. 153 CONG. REC. S4739-4741 (daily ed. Apr. 19, 2007). Kyl stated that the statutory maximum sentence for involuntary manslaughter should be increased because "the Federal criminal justice system still imposes a sentence for involuntary manslaughter in drunk driving cases that is only a third of the sentence that would be imposed for the exact same conduct under State law." *Id.* His statement clearly demonstrates that he expected that a person who causes the death of another when driving while intoxicated would be prosecuted under § 1112, not under the ACA.

For these reasons, I would find that the Texas statute was not an assimilated offense under 18 U.S.C. § 13(a).

## II.

Because the error was not brought to the court's attention, we review for plain error. *See* FED. R. CRIM. P. 52(b). An error is plain when it is clear or obvious and affects an appellant's substantial rights. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). If the error was plain, the court then has "the discretion to remedy the error–discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal citations omitted).

The error in this case was clear and obvious and affected Key's substantial rights. In *Lewis*, the Supreme Court mandated a framework for determining whether a state statute may be assimilated under the ACA. 523 U.S. at 164. This mandate was apparently ignored by the prosecutor, defense counsel, and the district court. Had the players in this case considered *Lewis*'s framework, they would have recognized that the Texas statute was not an assimilated offense under the ACA. Because the assimilation of the Texas statute was in error, the applicable statutory maximum for Key's conduct was eight years, not twenty. However, because defense counsel failed to raise the error and the

No. 08-51299

district court failed to consider the *Lewis* analysis when assessing Key's guilt, the district court believed the statutory maximum sentence was twenty years and sentenced Key to eighteen years' imprisonment. This erroneous belief undoubtedly affected Key's substantial rights. *See United States v. Garza*, 884 F.2d 181, 184 (5th Cir. 1989) (a "court cannot impose a sentence that exceeds the statutory maximum").

Because the error was plain, affected Key's substantial rights, and in my opinion, "seriously [a]ffect[ed] the fairness, integrity or public reputation of judicial proceedings[,]" I believe the panel should exercise its discretion and remedy the error in this case. *Puckett*, 129 S. Ct. at 1429. The indictment against Key charged him with violating 18 U.S.C. § 7(3) (defining the special maritime and territorial jurisdiction of the United States), 18 U.S.C. § 13 (the ACA), and Texas Penal Code § 49.08 (the Texas Intoxication Manslaughter statute). The indictment appears to reflect the assumption that assimilation of a state statute occurs simply by alleging the state statute to be assimilated. This indictment should have placed Key's appointed counsel on notice that there was an assimilation issue in this case. Key's counsel was thus charged with the responsibility of determining whether the Texas statute could be assimilated. Had his counsel researched this area of the law, he would have immediately discovered that (1) the Texas statute had never been assimilated by the Supreme Court or any panel of this circuit; (2) the most recent Supreme Court decision setting forth the requirements of assimilation was *Lewis*; and (3) 18 U.S.C. § 1112 makes punishable Key's conduct. This information should have prompted Key's counsel to move to dismiss the indictment, as was done in *Lewis*.

In my opinion, assimilating a state statute under the ACA is so serious and fundamental a task that the issue deserves thorough consideration by the prosecutor, defense counsel, and the district court. The fact that the issue was

28

not considered is troubling.    Before charging a crime under the ACA, the prosecutor should utilize the *Lewis* framework to determine whether the state statute can be assimilated.    Defense counsel should then, if appropriate, challenge the prosecutor's conclusion on assimilation and move to dismiss the indictment, and finally, the district court should make a determination on the record applying the *Lewis* framework.

This did not occur, and as a result, Key received a sentence ten years above the statutory maximum set by Congress for his offense.    The fair, right, and just result would be to follow our decision in *United States v. Lewis*, 92 F.3d 1371, 1379 (5th Cir. 1996), implemented by the Supreme Court in *Lewis v. United States*, 523 U.S. at 172, and vacate Key's sentence and remand for resentencing under the correct statutory maximum of eight years.