DeMOSS, Circuit Judge,
dissenting:
With respect for the position stated by my colleagues in the majority opinion, I find myself in fundamental disagreement with their resolution of whether Texas Penal Code § 49.08, Intoxication Manslaughter (the “Texas statute”), was properly *481 assimilated under 18 U.S.C. § 13(a), the Assimilated Crimes Act (“ACA”).
I.
The ACA makes punishable an act committed on a federal enclave that, “although not made punishable by any enactment of Congress, would be punishable if committed ... within the jurisdiction of the State [the enclave] is situated.” 18 U.S.C. § 13(a) (emphasis added).[1] The ACA’s basic purpose is “to fill in gaps in federal law where Congress has not defined the missing offenses.” Lewis v. United States, 523 U.S. 155, 160, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998) (quoting Williams v. United States, 327 U.S. 711, 718-19, 66 S.Ct. 778, 90 L.Ed. 962 (1946)) (internal marks omitted).
In 1998, the Supreme Court developed a basic framework to determine whether a state crime could be assimilated under the ACA. See id. at 164, 118 S.Ct. 1135. Under that framework, the court must first ask: “Is the defendant’s ‘act or omission ... made punishable by any enactment of Congress.’ ” Id. (quoting 18 U.S.C. § 13(a)) (emphasis in original). Ordinarily, if the answer is “no,” the state statute may be assimilated. Id. If the answer is “yes,” the court must then ask “whether the federal statutes that apply to the ‘act or omission’ preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.” Id. at 164-65, 118 S.Ct. 1135 (internal citations omitted). If the federal statute precludes application of the state law, the state crime cannot be assimilated. Id. Because the federal statute precludes application of the state law, I believe there is no “gap” in federal law for the Texas statute to fill.
A.
The first question under the Court’s framework is whether Key’s actions on June 30, 2008, are punishable under any enactment of Congress. I believe they are. Title 18 U.S.C. § 1112 makes punishable the act of causing a death while in “the commission of an unlawful act not amounting to a felony,” otherwise known as misdemeanor involuntary manslaughter. On June 30, 2008, Key drove while intoxicated — a misdemeanor under Texas law. See Tex. Penal Code Ann. § 49.04 (Vernons 2003). During the commission of the misdemeanor, Key caused the death of Sergeant Andre Araujo, and thus committed the federal offense of involuntary manslaughter. This conduct has been routinely prosecuted under § 1112. See, e.g., United States v. Lente, 323 Fed.Appx. 698, 699 (10th Cir.2009) (invoking New Mexico’s misdemeanor offense of driving while under the influence as the predicate unlawful act); United States v. Kathman, 490 F.3d 520, 522 (6th Cir.2007) (same, invoking Kentucky’s law); United States v. Wipf, 397 F.3d 632, 635 (8th Cir.2005) (requiring the jury to find that the defendant was driving a vehicle under the influence of alcohol as the predicate unlawful act); United States v. Dye, 7 F.3d 227 (4th Cir.1993) (unpublished) (invoking the Code of Federal Regulations’ “operating under the influence of alcohol” offense, which applies in national parks, as the predicate *482 unlawful act).[2]
The United States Sentencing Guidelines Manual (“U.S.S.G.”) § 2A1.4 (2007) also indicates that such conduct would be punished under § 1112. Section 2A1.4(a)(2)(B) provides a base offense level of 22 if the offense of involuntary manslaughter “involved the reckless operation of a means of transportation.” The commentary provides that “ ‘[r]eckless’ includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112. A homicide resulting from driving a means of transportation, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless.” Id. at § 2A1.4 cmt. n.l.
B.
Because Key’s actions are punishable under a Congressional enactment, the next question is whether the federal involuntary manslaughter statute precludes the application of the Texas statute. I believe it does, because the assimilation of the Texas statute would interfere with the achievement of federal policy.
The ACA does not assimilate crimes “where both state and federal statutes seek to punish approximately the same wrongful behavior-where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment.” Lewis, 523 U.S. at 165, 118 S.Ct. 1135.[3] Here, both statutes seek to punish approximately the same wrongful behavior. The federal statute seeks to punish an individual for causing the death of another while in “the commission of an unlawful act not amounting to a felony.” 18 U.S.C. § 1112(a). Likewise, the Texas statute seeks to punish an individual for causing the death of another while in the commission of a misdemeanor, albeit the specific misdemeanor of driving while intoxicated. See Tex. Penal Code Ann. § 49.08(a). Because the ACA was designed to assimilate state crimes where federal statutes did not provide for the punishment of the offense, state statutes, like the Texas Intoxication Manslaughter statute, that merely penalize one specific way to violate a federal statute should not be assimilated.
There is no gap in federal law for the Texas statute to fill. In my opinion, the only reason to prosecute Key under the ACA instead of § 1112 was to increase the maximum statutory sentence for the offense. The Texas statute carries a maximum statutory sentence of twenty years, whereas Congress has limited the maximum sentence under § 1112 to eight years. See Tex. Penal Code Ann. §§ 12.33(a), 49.08(b); 18 U.S.C. § 1112(b). In 2007, Congress considered increasing the punishment for involuntary manslaughter to ten years but ultimately decided eight years was the appropriate maximum for such conduct. Compare H.R. 660, 110th Cong. § 207 (as introduced in House Jan. 24, 2007), with H.R. 660, 110th Cong. § 207 (2007) (as enacted). In my view, setting the statutory maximum for any crime is exclusively a legislative function, and the executive and judicial branches of our government should *483 not attempt to bypass or change that legislative decision. Assimilating the Texas statute would work to bypass Congress’s recent decision to limit the statutory maximum for Key’s conduct to eight years and would thus be inconsistent with congressional policy.
The legislative history to the recent amendment to 18 U.S.C. § 1112 also demonstrates that Congress intended to punish such conduct under § 1112. Congress passed the Court Security Improvement Act of 2007, which increased the statutory maximum for involuntary manslaughter from six years to eight. H.R. 660, 110th Cong. § 207 (2007) (enacted). An indication as to why Congress increased the statutory maximum came from a statement by Senator John Kyi to the Senate. 153 Cong. Rec. S4739-4741 (daily ed. Apr. 19, 2007). Kyi stated that the statutory maximum sentence for involuntary manslaughter should be increased because “the Federal criminal justice system still imposes a sentence for involuntary manslaughter in drunk driving cases that is only a third of the sentence that would be imposed for the exact same conduct under State law.” Id. His statement clearly demonstrates that he expected that a person who causes the death of another when driving while intoxicated would be prosecuted under § 1112, not under the ACA.
For these reasons, I would find that the Texas statute was not an assimilated offense under 18 U.S.C. § 13(a).
II.
Because the error was not brought to the court’s attention, we review for plain error. See Fed.R.CrimP. 52(b). An error is plain when it is clear or obvious and affects an appellant’s substantial rights. Puckett v. United States, — U.S. -, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266 (2009). If the error was plain, the court then has “the discretion to remedy the error-discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.” Id. (internal citations omitted).
The error in this case was clear and obvious and affected Key’s substantial rights. In Lewis, the Supreme Court mandated a framework for determining whether a state statute may be assimilated under the ACA. 523 U.S. at 164, 118 S.Ct. 1135. This mandate was apparently ignored by the prosecutor, defense counsel, and the district court. Had the players in this case considered Lewis’s framework, they would have recognized that the Texas statute was not an assimilated offense under the ACA. Because the assimilation of the Texas statute was in error, the applicable statutory maximum for Key’s conduct was eight years, not twenty. However, because defense counsel failed to raise the error and the district court failed to consider the Lewis analysis when assessing Key’s guilt, the district court believed the statutory maximum sentence was twenty years and sentenced Key to eighteen years’ imprisonment. This erroneous belief undoubtedly affected Key’s substantial rights. See United States v. Garza, 884 F.2d 181, 184 (5th Cir.1989) (a “court cannot impose a sentence that exceeds the statutory maximum”).
Because the error was plain, affected Key’s substantial rights, and in my opinion, “seriously [a]ffect[ed] the fairness, integrity or public reputation of judicial proceedings!!,]” I believe the panel should exercise its discretion and remedy the error in this case. Puckett, 129 S.Ct. at 1429. The indictment against Key charged him with violating 18 U.S.C. § 7(3) (defining the special maritime and territorial jurisdiction of the United States), 18 U.S.C. § 13 (the ACA), and *484 Texas Penal Code § 49.08 (the Texas Intoxication Manslaughter statute). The indictment appears to reflect the assumption that assimilation of a state statute occurs simply by alleging the state statute to be assimilated. This indictment should have placed Key’s appointed counsel on notice that there was an assimilation issue in this case. Key’s counsel was thus charged with the responsibility of determining whether the Texas statute could be assimilated. Had his counsel researched this area of the law, he would have immediately discovered that (1) the Texas statute had never been assimilated by the Supreme Court or any panel of this circuit; (2) the most recent Supreme Court decision setting forth the requirements of assimilation was Lewis; and (3) 18 U.S.C. § 1112 makes punishable Key’s conduct. This information should have prompted Key’s counsel to move to dismiss the indictment, as was done in Lewis.
In my opinion, assimilating a state statute under the ACA is so serious and fundamental a task that the issue deserves thorough consideration by the prosecutor, defense counsel, and the district court. The fact that the issue was not considered is troubling. Before charging a crime under the ACA, the prosecutor should utilize the Lewis framework to determine whether the state statute can be assimilated. Defense counsel should then, if appropriate, challenge the prosecutor’s conclusion on assimilation and move to dismiss the indictment, and finally, the district court should make a determination on the record applying the Lewis framework.
This did not occur, and as a result, Key received a sentence ten years above the statutory maximum set by Congress for his offense. The fair, right, and just result would be to follow our decision in United States v. Lewis, 92 F.3d 1371, 1379 (5th Cir.1996), implemented by the Supreme Court in Lewis v. United States, 523 U.S. at 172, 118 S.Ct. 1135, and vacate Key’s sentence and remand for resentencing under the correct statutory maximum of eight years.

. The italicized portion of this statute is, in my view, a precondition that should be addressed first in the process of deciding assimilation.

. In addition to the above cited cases, there have been many other pre- and post-Lewis cases where § 1112 was charged to punish involuntary manslaughter occurring on an Indian reservation as a result of driving while intoxicated.

. In my opinion, the statutes are approximately the same: 1) they are modern day versions of the common law offense of involuntary manslaughter; 2) they are felony offenses; and 3) neither statute requires a specific criminal intent.