RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

No. 06-5669

MICHAEL R. KATHMAN,

*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 05-00027—Thomas B. Russell, District Judge.

Argued: April 27, 2007

Decided and Filed: June 20, 2007

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

---

### COUNSEL

**ARGUED:** Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Charles E. English, Jr., ENGLISH, LUCAS, PRIEST & OWSLEY, Bowling Green, Kentucky, for Appellee. **ON BRIEF:** Terry M. Cushing, Randy W. Ream, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Charles E. English, Jr., ENGLISH, LUCAS, PRIEST & OWSLEY, Bowling Green, Kentucky, for Appellee.

---

### OPINION

---

RALPH B. GUY, JR., Circuit Judge. The United States appeals from the sentence imposed on defendant Michael R. Kathman on two counts of involuntary manslaughter resulting from an automobile accident in a national park that killed his two passengers. *See* 18 U.S.C. § 1112. Challenging the post-*Booker* sentence, the government argues that the district court erred in awarding a two-level reduction for acceptance of responsibility and that the downward variance from the advisory guideline range was substantively unreasonable. *United States v. Booker*, 543 U.S. 220 (2005). After review of the record and the arguments presented on appeal, we affirm.

### I.

On August 13, 2004, at around 11:30 p.m., Kathman, age 22, lost control of his car and hit a tree, tragically killing Jeffrey Beck and Gregory Ackley. The crash occurred in Mammoth Cave

National Park, not far from the campsite where they and several friends, all young men in their early 20s, were going to spend the weekend. A group of them had left Cincinnati, Ohio, early on August 13 to choose a campsite, but Kathman, Beck, and Ackley did not leave until after work. Caught in a traffic jam on the way, they started drinking beer they had packed for the trip. At about 11:00 p.m., Kathman stopped and called the friends at the campsite for directions.

According to the state trooper who reconstructed the accident, the car was traveling on Houchins Ferry Road, an asphalt road with several curves and moderate grades, when the front right tire dropped off the shoulder. The driver overcorrected, lost control of the car, and struck a tree in the center of the passenger door. Ackley, who was in the front passenger seat, and Beck, who was in the back, were killed by the impact. Kathman, who sustained broken ribs, a collapsed lung, and a head injury, was transported to a hospital. He underwent surgery and spent five days in the hospital.

The toxicology report indicated that Kathman's blood alcohol content was .071 when he arrived at the hospital. It was estimated that his blood alcohol content at the time of the accident was between .097 and .133, which would have been over the legal limit of .08. KY. REV. STAT. § 189A.010. From the marks on the road, the trooper determined that Kathman was traveling between 43.5 and 46.9 miles per hour (or an average of 45 miles per hour) on a road with a posted speed limit of 35 miles per hour.

Kathman told the EMTs at the scene and his parents in the emergency room that Ackley had been driving. The next day, Kathman could not remember the accident or talking to his parents. Although Kathman would not talk to investigators, his parents related that he had told them that he was not driving. The prosecutor retained an expert to determine who was driving, and a civil suit was filed against Kathman. Autopsies were performed, the results of which showed that neither Ackley nor Beck were driving at the time of the crash. Kathman's insurer settled with the families of the deceased.

Indicted in May 2005, defendant was charged with two counts of involuntary manslaughter within the territorial jurisdiction of the United States, namely, by unlawfully and without due caution and circumspection causing the death of another in the commission of the unlawful act of operating a motor vehicle in a grossly negligent manner. 18 U.S.C. § 1112(a). The statutory maximum for this offense is a six-year term of imprisonment. Kathman maintained that he had amnesia concerning the crash, and that the last thing he remembered before the crash was stopping to call for directions to the campsite. With the assistance of counsel, defendant moved to change his plea to a nolo contendere plea consistent with *North Carolina v. Alford*, 400 U.S. 25 (1970).[1]

When members of Ackley's family questioned his claim of amnesia, the district court ordered the submission of all the medical records, police and investigative reports, accident reconstruction reports, any statements of the defendant, and any other information that might be relevant to the claim of amnesia or the proposed plea. Having reviewed all the material and after confirming that the government did not want another medical evaluation performed, the district court found that Kathman, while not maintaining his innocence, had amnesia that prevented him from truthfully admitting the facts relevant to the offenses as would be required for a guilty plea.

---

[1]Although the judgment states that Kathman entered a nolo contendere plea, the parties maintain and the record reflects that an *Alford* plea was offered and accepted. This court distinguished between a plea of nolo contendere and an *Alford*-type guilty plea in *United States v. Tunning*, 69 F.3d 107, 110-11 (6th Cir. 1995). There, we explained that: "The so-called '*Alford* plea' is nothing more than a guilty plea entered by a defendant who either: 1) maintains that he is innocent; or 2) without maintaining his innocence, 'is unwilling or unable to admit' that he committed 'acts constituting the crime.'" *Id*. at 110 (quoting *Alford*, 400 U.S. at 37). "An *Alford*-type guilty plea is a guilty plea in all material respects." *Id*. at 111.

With the government's proffer of the facts supporting conviction, the district court accepted Kathman's *Alford* plea. The government does not appeal from either the finding of amnesia or the discretionary decision to accept the *Alford* plea.

The sentencing guidelines for involuntary manslaughter provide for a base offense level of 12 if the offense involved criminally negligent conduct, 18 if it involved reckless conduct, and 22 if the offense involved the reckless operation of a means of transportation. United States Sentencing Guidelines (USSG) § 2A1.4(a). Consistent with the application notes defining "reckless," the Presentence Report (PSR) recommended a base offense level of 22 because the deaths resulted from driving while under the influence of alcohol.[2] A multiple-count adjustment increased the offense level to 24, while a two-level reduction for acceptance of responsibility resulted in a total offense level of 22. With no prior criminal history, Kathman's recommended sentencing guideline range was 41 to 51 months' imprisonment.

At sentencing, the district court overruled the government's objection to the reduction for acceptance of responsibility (without which the guideline range would have been 51 to 63 months). The government argued for a sentence of 51 months, and defendant requested community confinement. Having received considerable input from those arguing for and against leniency, the district court analyzed the relevant sentencing factors from 18 U.S.C. § 3553(a) and sentenced Kathman to concurrent 20-month terms of imprisonment, to be followed by three years of supervised release.[3] The United States appealed from the sentence.

## II.

Sentences imposed post-*Booker* are reviewed for procedural and substantive reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1110 (2006). Once the appropriate advisory guideline range is calculated, it must be considered along with the other pertinent § 3553(a) sentencing factors. *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). The government's only challenge to the guideline calculation is to the determination that Kathman should receive the two-level reduction for acceptance of responsibility under USSG § 3E1.1.

## A.     Acceptance of Responsibility

As the government concedes, an *Alford* plea does not categorically disqualify a defendant from receiving a § 3E1.1 reduction for acceptance of responsibility. *United States v. Tucker*, 925 F.2d 990 (6th Cir. 1991). In fact, a defendant who enters a guilty plea is not entitled to the reduction as a matter of right, while a defendant who goes to trial is not automatically ineligible. USSG § 3E1.1, cmt. n.2-3. Rather, the district court must determine whether the defendant has demonstrated acceptance of responsibility by a preponderance of the evidence. *United States v. Donathan*, 65 F.3d 537, 541 (6th Cir. 1995). We review the district court's determination on the issue for clear error. *United States v. Paulette*, 457 F.3d 601, 608 (6th Cir. 2006).; *see also* USSG

---

[2] "'Reckless' means a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard the risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. 'Reckless' includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112. A homicide resulting from driving a means of transportation, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless." USSG § 2A1.4 cmt. n.1.

[3] Supervised release conditions included 250 hours of community service related to alcohol awareness, and restitution was ordered in the amount of $9,432.86.

3E1.1, cmt. n.5 (sentencing judge's determination regarding acceptance of responsibility is entitled to great deference).

The government relies specifically on evidence that Kathman made statements the night of the crash denying that he was driving and casting blame on Ackley. Unable to remember after that—a fact no longer contested—Kathman refused to talk to investigators and did not contact the victims' families. The investigation showed that Kathman was driving and, in moving for a change of plea, Kathman also accepted that he had been driving over the speed limit and under the influence of alcohol at the time of the accident. Moreover, in accepting the plea, the district court found that Kathman was not maintaining his innocence, but was simply unable to truthfully admit a factual basis for a guilty plea due to his amnesia.

Kathman stated at sentencing that: "Though I do not know what happened, it has haunted me every day. Losing two fine gentlemen such as your sons, and I do take full responsibility for that. And I hope in the future you can somehow forgive me for what I have done to you and everyone associated." The district court reiterated that Kathman was not claiming innocence, and noted that the plea carried the risk that the government would oppose the reduction for acceptance of responsibility. Overruling the government's objection, the district court concluded that Kathman had owned up to his conduct as best he could. Whether or not we would have reached the same conclusion, we certainly cannot say that it was clear error for the district court to have found that Kathman demonstrated acceptance of responsibility under the circumstances. Finding that the guideline range was properly calculated, we reject the challenge to the procedural reasonableness of the sentence.

## B.    Variance

In reviewing a sentence for substantive reasonableness, the starting point is the advisory guideline range because it is one of the § 3553(a) factors and because the guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors. *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006), *petition for cert. filed* (U.S. Nov. 13, 2006) (No. 06-7784). While a sentence within the guideline range is presumptively reasonable, a sentence outside the guidelines is not presumptively *un*reasonable. *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006). In reviewing a non-guidelines departure, often referred to as a variance, we apply a proportionality review. *Davis*, 458 F.3d at 496. That is, the farther the sentence departs (upward or downward) from the advisory guideline range, the more compelling the § 3553(a) justification must be. *Id.*

A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor. *Webb*, 403 F.3d at 395. The government maintains that a sentence of less than two years' imprisonment was substantively unreasonable because the district court gave too much weight to several of the factors. This, the government argues, is particularly true given that the variance was 50% below the low end of the guideline range.[4]

There is no dispute here that the district court considered the appropriate § 3553(a) sentencing factors, starting with the properly calculated guideline range of 41 to 51 months. Those

---

[4]Although this court has expressed the extent of a variance in terms of a percentage, the focus of our review of downward variances under the proportionality standard has been on the district court's reasons for varying from the advisory guideline range. *See United States v. Husein*, 478 F.3d 318, 332-35 (6th Cir. 2007) (affirming 99% variance from guideline range of 37 to 46 months to a one-day sentence); *Davis*, 458 F.3d at 494-500 (vacating a variance from guideline range of 30 to 37 months to a sentence of one day in prison); *United States v. Fuson*, 215 F. A'ppx 468 (6th Cir. 2007) (affirming variance from guideline range of 27 to 33 months to probation).

factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence "to reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1) and (2). The court is also to consider the kinds of sentences available, the advisory guideline range, relevant guideline policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. *Id*. at § 3553(a)(3)-(7). Ultimately, the statute directs that the district court "shall impose a sentence sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id*. at § 3553(a)(2).

Addressing the nature and circumstances of the offense, the district court noted that the accident happened close to their destination, on a road they were not familiar with, at night, and on a bad curve. Also, there was no question that Kathman's blood alcohol content was over the limit, although not by a lot, and that he was traveling at about ten miles per hour over the speed limit. The court found that "the cause of the accident was probably not the speed, but the fact that drinking was involved and judgment was impaired slightly to go at a faster speed, but that the ability to react and do things as you would normally do were impaired." Finding that there was no doubt that this recklessness required punishment, the court emphasized that this case did not involve the high speeds or severe intoxication that is often the case.

The examples mentioned by the district court included someone who drives 90 miles per hour, crosses the road, and hits a school bus killing 15 or 25 people, or someone who drives severely intoxicated and runs off the road into a group of people. The government criticizes reference to these examples, arguing that they are not meaningful because the court did not identify the cases or the sentences imposed or whether they were state cases. The point—which is not without basis—was that involuntary manslaughter resulting from drunk driving often involves a higher degree of recklessness than was evident in this case.

With respect to the history and characteristics of the defendant, it is true that the criminal history calculation took into account the fact that Kathman had no prior criminal convictions. Beyond that, however, Kathman had not been in any trouble with the law before the accident.[5] As the district court noted, Kathman was "a law abiding fine young man who made a bad mistake on this evening, and [used] poor judgment." He was a high school athlete, worked to pay his way through college, and was chosen from a dozen candidates for a co-op position that later led to a full-time job offer. In more than 20 letters submitted on the defendant's behalf by friends, family, and coworkers, Kathman was described as responsible, honest, caring, hard-working, and trustworthy. One friend described Kathman as a genuinely good person who had been nothing but a positive influence on their core group of friends.

The district court explained that any drinking and driving is a serious offense, and is more serious when deaths result; that these consequences require punishment to promote respect for the law; and that just punishment should take into account the fact that the circumstances did not involve extreme recklessness. With respect to deterrence and protection of the public, the district court explained that while any sentence would adequately deter this defendant, the sentence also had to be sufficient to deter others. Finally, incarceration would not provide the defendant with any needed training or treatment. Reiterating that Kathman's conduct deserved punishment, the district court rejected Kathman's request for a probationary sentence but also concluded that the government's

---

[5]He had one parking ticket before the accident, and a violation for driving with expired plates after the accident.

requested sentence of 51 months was "way too much." Varying downward, the district court sentenced Kathman to two concurrent terms of 20 months in prison.

We find, recognizing that the advisory nature of the guidelines provides greater discretion to the district court, that the variance in this case was not based on impermissible or disfavored factors, properly considered the relevant § 3553(a) factors, and was not the result of an unreasonable amount of weight having been given to any of those factors. In all, we find that the variance, while substantial and requiring proportionally greater explanation, met this standard and was not substantively unreasonable.

**AFFIRMED**.