**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0638n.06

No. 09-5029

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Oct 04, 2010
LEONARD GREEN, Clerk**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee**, | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| | ) | |
| JOSEPH WHITE, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

**BEFORE: NORRIS, ROGERS, and WHITE, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.**  Joseph White was convicted by a jury on one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g).  He was sentenced to a prison term of 72 months.  In this direct appeal, White challenges both his conviction and his sentence.  For the reasons that follow, we affirm.

**I.**

The events leading to White's arrest and eventual conviction for unlawfully possessing a firearm can be fairly characterized as a domestic dispute involving White, his sister (Tiffany Watson), his then-girlfriend (Tamika Berry) and her husband (Terry Tyrone Jones), and a friend (David Bobo).  White went with his girlfriend and his sister to the mailbox in front of Mr. Jones's home to look for a check that Ms. Berry was expecting.  Mr. Bobo, who was at the house looking

1

after Mr. Jones's children, called Mr. Jones at work to inform him of what was happening. Mr. Jones left work and returned home to investigate. By the time he arrived, the group had departed in a vehicle owned and driven by Ms. Watson. As events unfolded, Mr. Jones and Mr. Bobo located the group, called 911, and then followed them to try to get the license plate number. While they were following the vehicle, White fired a weapon out of the back-passenger's-side window.

Ms. Watson drove away, eventually arriving at an apartment complex. Thereafter, White placed the gun in a paper bag, which he then hid in some bushes located near the apartment complex. The group was heading back toward Mr. Jones's neighborhood when the police spotted and detained them.

White was arrested and taken into custody. While in custody, he waived his *Miranda* rights, and he admitted possessing, firing, and hiding the gun. He claimed that he did not direct his fire at Mr. Jones and Mr. Bobo, but merely fired shots into the air. He further informed officers that he accompanied Ms. Berry to Mr. Jones's house because she was afraid to go alone. He also stated that he had purchased the gun some three years earlier. White's statement was reduced to writing, which he read and signed.

A federal grand jury indicted White on one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g). During pre-trial proceedings, he filed a motion to suppress, seeking to bar the admission of his written statement as evidence at trial. The district court denied the motion. The case proceeded to trial.[1]

---

[1]Two trials were held in this action. The first ended in a mistrial because the jury could not agree on a verdict. The second ended in White's conviction.

2

At trial, the district court determined that White was not entitled to assert a justification defense. White does not appeal that determination.

As relevant to this appeal, the trial proceeded as follows. The government's case-in-chief included four witnesses who identified White as the person who shot the gun from the back of Ms. Watson's vehicle. The government also put on testimony from law-enforcement officers concerning their arrest of White and their search for the gun. Through Detective Jerry Chatman's testimony, the government introduced the inculpatory statement White made to police while in custody. White, through his counsel, vigorously contested the element of possession and challenged the credibility of the witnesses' testimony.

During the government's redirect examination of Detective Chatman, the prosecutor asked, "What would happen if you came in here and lied under oath?" Detective Chatman responded that he would go to jail and lose his job. White's counsel did not object to the question posed or to the response given.

During closing rebuttal argument, the prosecutor said that for the jury to accept the defense's theory that White never possessed the gun, it also must believe that he was "a victim of a major conspiracy" and that if the jury believed that all of the witnesses conspired to frame White, then the prosecutor had not done his job. White's attorney did not object to these statements.

After the parties' closing arguments, the district court issued the jury charge. The jury charge included instructions on not only actual possession, but also constructive possession and joint possession. Defense counsel lodged no objection.

The jury returned a guilty verdict. Subsequently, at sentencing, the district court denied White's request for a two-level departure for acceptance of responsibility. He was sentenced to a term of imprisonment of 72 months, to be followed by two years of supervised release.

On appeal, White raises four assignments of error. Specifically, he argues that (1) the prosecutor impermissibly vouched for Detective Chatman's credibility by asking on redirect examination what would happen to him if he lied under oath; (2) the prosecutor improperly argued to the jury during closing rebuttal argument that to believe in White's defense theory, the jury would also have to believe that the witnesses testifying against White were involved in a conspiracy to frame him; (3) the district court's jury instructions on constructive possession and joint possession were not supported by the evidence and should not have been given; and (4) the district court erred in denying a two-level reduction of sentence for acceptance of responsibility.

**II.**

A. *Standards of Review*

A defendant's failure to object during proceedings below to the issues raised on appeal limits our review to one for plain error. *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996). Because defense counsel failed to object to the prosecutor's redirect question and rebuttal statements that he now contends constituted prosecutorial misconduct, we review those issues for plain error. Similarly, because counsel did not object to the district court's jury charge on constructive and joint possession, we review that issue for plain error. We review for clear error White's final assignment of error concerning the district court's denial of an acceptance-of-responsibility reduction. *United States v. Brown*, 367 F.3d 549, 556 (6th Cir. 2004).

B. *Prosecutorial Misconduct*

In White's first two assignments of error, he contends that the prosecutor engaged in prosecutorial misconduct. Specifically, as his first contention, White argues that the prosecutor improperly vouched for the testimony of Detective Chatman by asking, "What would happen if you came in here and lied under oath?", to which Detective Chatman responded, "I would go to jail, lose my job." It is White's position that the question and response were designed to place the prestige of the prosecutor's office behind Detective Chatman's testimony and to inject the prosecutor's personal beliefs about the credibility of the witness into the proceedings.

As his second contention, White argues that the prosecutor made improper statements during the government's closing rebuttal argument by asserting that to believe White's defense theory, i.e., that he did not possess the gun, the jury would have to believe that he was the victim of a conspiracy involving, among others, law enforcement officials who testified on the government's behalf. He also points to the prosecutor's statement, "if you believe that all these people conspired, then let him go." In addition, White takes issue with the prosecutor's comments that if the jury believed in the existence of a conspiracy, "then I did not do my job." White asserts that these statements were improper for three reasons. First, he claims that they invoked jurors' feelings of patriotism and loyalty to their government as a basis for finding White guilty. Second, he argues that the statements prejudiced his defense because a prosecutor may not argue to the jury that it must find that a witness lied to acquit the defendant, nor may a prosecutor argue that to acquit the jury must find that the government framed the defendant. Finally, as he couches the argument in his brief, the prosecutor's comments placed the prestige of the government at issue and implied that the prosecutor "knew what

5

the truth was" and that "if for some reason the jury did not adopt the government's version of the case, then it was a personal failure not to convince the jury of the truth as he knew it."

Determining whether a prosecutor's conduct or remarks constitute misconduct sufficiently severe to warrant a new trial entails a two-step process. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (citing *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994)). First, we review whether the prosecutor's conduct or remarks were improper. *Id.* Second, if we find such impropriety, we consider the following four factors in evaluating whether the impropriety was flagrant and thus merits a reversal: "(1) whether the remarks [or conduct] tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Carroll*, 26 F.3d at 1385.

When the issue on appeal involves a challenge to a prosecutor's remarks at trial, we consider the challenged comments within the context of the trial as a whole to determine whether such comments amounted to prejudicial error. *Carter*, 26 F.3d at 783 (citing *United States v. Young*, 470 U.S. 1, 11-12 (1985)). In making this determination, we examine "whether, and to what extent, the prosecutor's improper remarks were invited by defense counsel's argument." *Id.*

Here, as noted above, we review for plain error because defense counsel did not object to the prosecutor's question and statements at trial. *See Collins*, 78 F.3d at 1039. Although "prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it," *Carroll*, 26 F.3d at 1385 n.6, we will not overturn a verdict based upon the prosecutor's improper conduct unless the misconduct was "'so pronounced and persistent that it permeated the entire atmosphere of the trial'" or was "'so gross as

probably to prejudice the defendant.'" *United States v. Tocco*, 200 F.3d 401, 421 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

To obtain relief under a plain error analysis, a defendant must prove "(1) error, (2) that is plain, and (3) that affect[s] [the defendant's] substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)(internal quotation marks omitted)). Once the defendant has made the required showing, "an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson.* at 467; *see also United States v. Monus*, 128 F.3d 376, 386 (6th Cir. 1997). In exercising our discretion under a plain error standard of review, we consider the four factors identified in *Carroll* to determine whether the error warrants reversal. *See Carter*, 236 F.3d at 783-84.

1. *Propriety of Question Posed to Detective Chatman by Prosecutor During Redirect Examination*

The prosecutor did not engage in vouching when he asked Detective Chatman on redirect what the consequence would be for lying under oath. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). "Generally, improper vouching involves either blunt comments . . . or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id.* (internal citations and quotations omitted). On cross-examination, defense counsel challenged the credibility of Detective Chatman's testimony by contending that his written report of the interview he

7

conducted with White contained numerous omissions and by implying that Ms. Watson and Ms. Berry were not permitted to leave the police station until they implicated White in the shooting. On redirect, the prosecutor properly sought to rehabilitate Detective Chatman after cross-examination challenged the his credibility. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) ("'[C]ross-examination attacking a witness's credibility and character will open the door to redirect examination rehabilitating the witness.'" (quoting with approval *United States v. Martinez*, 775 F.2d 31, 37 (2d Cir. 1985))); *see also United States v. Arnold*, 890 F.2d 825, 830 (6th Cir. 1989) (recognizing prosecutor's statements in rebuttal argument as permissible effort to rehabilitate government witnesses following defense's attacks on their credibility). Nothing in the record suggests that in posing the question, the prosecutor referred to evidence that was not before the jury, asserted his personal belief in the truthfulness of Detective Chatman's testimony, or implied that the prosecutor had special knowledge of facts that were not before the jury.

   2. *Propriety of Statement Regarding Conspiracy*

The prosecutor's statements in rebuttal argument were likewise not improper. The law is well-settled that "counsel has the freedom at trial to argue reasonable inferences from the evidence." *Carter*, 236 F.3d at 784. This is precisely what the prosecutor did. In the face of eyewitness testimony from four witnesses who saw White with a gun, and his own admission that he possessed and shot a firearm while he was being followed by Mr. Jones and Mr. Bobo, White nevertheless contested the possession element of the charged offense. The prosecutor appropriately drew the logical inference that, if the jury rejected the government's evidence and believed White's version, it would also have to believe that he was the victim of a conspiracy involving everyone who testified

against him. The prosecutor did not, as White suggests, argue that the jury had to believe the conspiracy defense to acquit White.

Similarly, the prosecutor did not make an improper statement by saying that, if the jury believed White, the prosecutor had not done his job. Taken in context, the statement indicates merely that, if the jury believed that defendant did not possess the gun, then the government had failed to meet its burden of proof.

B. *Jury Instruction on Constructive Possession and Joint Possession*

As his third assignment of error, White contends that the district court erred in instructing the jury on the concepts of constructive possession and joint possession when the evidence adduced at trial was insufficient to justify charging the jury on those theories of possession. As noted above, because White did not object during trial proceedings, our review is for plain error. In reviewing jury instructions under the plain error standard, we consider whether "the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." *United States v. Wood*, 364 F.3d 704, 708 (6th Cir. 2004) (quoting *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992) (internal quotation marks omitted)).

White contends that the court erred in using boilerplate instructions on the element of possession because they included jury charges on constructive possession and joint possession, even though the government appeared to base its theory only on actual possession.[2] In White's view, the instructions on joint and constructive possession lack evidentiary support and the instructions, therefore, were prejudicial to the his right to a fair trial. Specifically, he argues that there was no

---

[2]The jury instructions also included a charge on actual possession. White does not challenge that portion of the instructions.

evidentiary support for joint possession and, consequently, that instruction should not have been given. As for the constructive possession instruction, White contends that, although there was evidence that he hid the gun in some bushes, the government failed to offer proof that he had the specific intent to retrieve it. *See United States v. Mayberry*, 540 F.3d 506, 514 (6th Cir. 2008) (noting that an element of constructive possession is intention at a given time to exercise dominion and control).

With respect to the evidence supporting the instruction on joint possession, the government claims that the following evidence could allow a jury to find joint possession: (1) White had the gun in a vehicle in which two other people were also passengers; (2) Ms. Watson was driving the vehicle and could have controlled the firearm's movement simply by bringing the vehicle to a stop; (3) Ms. Berry encouraged the use of the firearm and thus had the ability to control it. With respect to the constructive possession instruction, the government argues that the evidence showed that White put the gun in a bag and "stashed" it in some bushes. Because he actively hid the gun instead of simply throwing it out the window, the jury could infer that he intended to retrieve the weapon at a later time. For these reasons, the government argues that both the joint possession and constructive possession instructions were justified.

The government has not pointed to persuasive evidence that would warrant the instruction on joint possession. Nor has the government provided any legal authority indicating that the facts it claims justify the instruction have been recognized as sufficient by this or any other court. The district court erred in giving that instruction. In addition, the government somewhat mischaracterizes the evidence supporting the instruction on constructive possession. In his written statement, White said that he "tossed" the firearm into some bushes after he placed it in a bag, not, as the government

10

maintains, that he "stashed" it there. See Tr. Trans., 10/07/08, R.94 at 164. Despite this mischaracterization, we nevertheless agree that White's affirmative act of secreting the gun could create an inference that he intended to return to the bushes to retrieve it, which is adequate evidence to support a jury charge on constructive possession.

Given that our review is for plain error, the instructions on possession, when taken as a whole, were not so clearly wrong as to produce a grave miscarriage of justice. Only the instruction on joint possession was unsupported by the evidence. That error, however, does not provide cause for reversal. *See Griffin v. United States*, 502 U.S. 46, 60 (1991) (district court's refusal to remove an insufficiently supported legal theory of liability from the jury's consideration "does not provide an independent basis for reversing an otherwise valid conviction"); *United States v. Hughes*, 134 F. App'x 72, 77 (6th Cir. 2005) ( "[w]here one of two grounds for conviction is unsupported by the evidence and sufficient evidence supports the other ground for conviction, an error claimed as to the unsupported charge is harmless as a matter of law") (citing *United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995)).

C. *Denial of Reduction for Acceptance of Responsibility*

Finally, White asserts that the district court erred in denying a two-level reduction to his base offense level for acceptance of responsibility. A district court has discretion to award a reduction in sentence for acceptance of responsibility under § 3E1.1 of the United States Sentencing Guidelines if it determines by a preponderance of the evidence that the defendant has accepted responsibility for commission of the offense. *United States v. Kathman*, 490 F.3d 520, 524 (6th Cir. 2007). As noted above, we review the district court's determination for clear error. *Id*.

11

A defendant is entitled to a two-level reduction in the offense level under the Sentencing Guidelines "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Application Note 2 states:

> **2.** This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, comment (n.2).

Although the district judge stated at sentencing that he believed White's case presented somewhat of a close question, and that the circumstances warranted some "consideration to the possibility that maybe some acceptance should be allowed," he ultimately denied the reduction because White decided to proceed with trial despite the unavailability of the justification defense. Sentencing Hearing, R. 92 at 22. The district court stated, in pertinent part:

> It is very important that in a case like this we be aware that a person can have a proper defense and can properly raise it; and if they do that, then they should get their acceptance points. . . . In this case, I should not . . . give the two points.
> . . .
> It was a complicated fact-set, so I think it comes down to this should [sic] not deviate from the general rule where the government is put to its burden of proof at trial. Usually acceptance of responsibility is not available and while there's an argument, a serious argument, the court has considered about whether or not at least partial acceptance, two points should be granted because of the reasons for the defense asserted. Because the court's finding regarding the unavailability of that defense under really any construction of these facts, I'm going to deny those two points.

Sentencing Hearing, R. 92 at 24-26.

12

White contends that the district court improperly denied the acceptance-of-responsibility reduction by basing its denial in part upon White's decision to file a motion to suppress and in part upon his efforts to raise the justification defense at trial. These contentions lack merit.

The district court recognized that putting the government to its burden did not require denial of the reduction under § 3E1.1 but concluded that this case did not warrant such a reduction because White was not entitled to assert the justification defense based upon the facts. *See Brown*, 367 F.3d at 556-57 (upholding district court's denial of acceptance of responsibility where defendant asserted justification defense at trial and where district court recognized authority to grant reduction but found facts of case did not warrant reduction because defendant's explanation of facts was not credible). In reaching this determination, the district court relied heavily on the fact that the justification defense was unavailable as a matter of law based on the circumstances of the case, not on the fact that White attempted to assert the defense, nor, for that matter, on the fact that White filed a motion to suppress. Once the district court determined that the justification defense was unavailable, White vigorously contested two of the three elements concerning his factual guilt of the offense. On these facts, the district court committed no clear error in denying the reduction.

## III.

The district court's judgment is **affirmed.**