# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued March 7, 2025        Decided September 2, 2025

No. 23-5012

LAMAR A. FORBES,
APPELLANT

v.

JOHN PHELAN, SECRETARY OF THE NAVY AND RANDALL
LAMOUREUX, PRESIDENT, NAVAL CLEMENCY AND PAROLE
BOARD,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02175)

---

*Robert Feldmeier* argued the cause and filed the briefs for appellant.

*Bradley Hinshelwood*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brett A. Shumate*, Acting Assistant Attorney General, and *Melissa N. Patterson*, Attorney. *Brenda A. Gonzalez Horowitz*, Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, PILLARD and PAN, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:    Lamar Forbes, a former Navy sailor, contracted the human immunodeficiency virus while in the service and engaged in unprotected sexual intercourse with four women without informing them of his status.  Facing charges that he violated several articles of the Uniform Code of Military Justice, Forbes pleaded guilty before a military judge sitting as a general court-martial.  He was sentenced to eight years' confinement, a reduction in paygrade, and a dishonorable discharge.  The Navy-Marine Court of Criminal Appeals and then the Court of Appeals for the Armed Forces heard his appeals and affirmed his conviction.  While on supervised release, Forbes sought to overturn those convictions by filing a petition for a writ of habeas corpus with the district court.  The district court denied Forbes's petition, holding that he procedurally defaulted several of his arguments by failing to raise them before the military courts and that those courts fairly considered the arguments he preserved.

On appeal, Forbes argues that the district court erred in holding that the military courts had subject matter jurisdiction to hear his case because, in his view, the Uniform Code of Military Justice does not punish the type of conduct he engaged in.  And because those errors were jurisdictional, he contends, the standard rules of procedural default and deferential review of military court convictions do not apply.  Additionally, Forbes argues that the district court erred in holding that he failed to preserve his claim that the military courts' judgments amounted to an unconstitutional *ex post facto* expansion of criminal liability.

We affirm.  Forbes styles several of his arguments as "jurisdictional," but they do not challenge the military courts' authority to hear his case.  Because Forbes's challenges are

non-jurisdictional, all standard procedural default rules apply, and we review the military courts' decisions on his preserved claims only to determine whether the military courts fairly considered them. We hold that Forbes procedurally defaulted arguments he failed to raise before the military courts, including his challenges to the Article 134 conviction and constitutional *ex post facto* challenge to the Article 120 convictions, and that the military courts fully and fairly evaluated the challenge he did make to the adequacy of the Article 120 specifications before rejecting them as contrary to binding military precedent. Accordingly, we affirm the judgment of the district court.

**I.**

**A.**

Lamar Forbes is a former Navy sailor who tested positive for human immunodeficiency virus (HIV) in 2012. *United States v. Forbes*, 77 M.J. 765, 768 (N-M Ct. Crim. App. 2018). Medical providers gave Forbes preventative medicine counseling directing him to refrain from engaging in sexual activity without first advising prospective partners of his diagnosis. Forbes did not comply. While stationed in Virginia, Forbes had unprotected sexual intercourse with four women between 2013 and 2015 without informing them about his HIV-positive status. Forbes maintains that, during that time, he was on an antiretroviral treatment that suppressed his viral load and rendered his HIV non-transmissible. None of his sexual partners contracted HIV as a result of contact with Forbes.

In 2015, the Commander of the Mid-Atlantic Navy Region (Navy) convened a court-martial and charged Forbes with one specification of making a false official statement under Article

107 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907, four specifications of sexual assault under Article 120, *id.* § 920, four specifications of assault consummated by a battery under Article 128, *id.* § 928, and one specification of violating Article 134, *id.* § 934, which authorizes a court-martial to punish violations of all non-capital federal crimes not specifically stated in the UCMJ.[1]  As to the last specification, the Navy charged Forbes under the Assimilative Crimes Act, 18 U.S.C. § 13, which makes it a federal crime to engage in conduct while on a federal enclave—here, a naval base in Virginia—that would violate the laws of the state in which the enclave is located.  The specification described conduct in violation of Virginia's infected sexual battery statute, which made it a misdemeanor for "[a]ny person . . . knowing he is infected with HIV" to have "sexual intercourse . . . with another person without having previously disclosed the existence of his infection."  VA. CODE ANN. § 18.2-67.4:1(B) (2012).[2]

Forbes pleaded guilty.  Pursuant to a plea agreement, the Navy withdrew one of the sexual assault specifications and all four specifications of assault consummated by a battery. Forbes was thus convicted based on his guilty plea on one specification of making a false official statement under Article 107, three specifications of sexual assault under Article 120, and one specification of violating Article 134 by incorporation

---

[1] In the military court system, a "charge" identifies the article of the UCMJ the accused is alleged to have violated while a "specification" is a "statement of the essential facts constituting the offense charged."  MANUAL FOR COURTS-MARTIAL, UNITED STATES, Rule for Courts-Martial (R.C.M.) 307(c)(2), (3) (2024).  A specification is "sufficient" if it alleges all elements of the charged offense. R.C.M. 307(c)(3).

[2] 10 U.S.C. § 920 and VA. CODE ANN. § 18.2-67.4:1 were amended after Forbes's conviction.

of Virginia's infected sexual battery statute. The military judge sentenced Forbes to "eight years' confinement, reduction to paygrade E-1, and a dishonorable discharge." *Forbes*, 77 M.J. at 767.

**B.**

Forbes appealed his sexual assault convictions to the Navy-Marine Corps Court of Criminal Appeals (NMCCA), arguing, *inter alia*, that his conduct as described in the specification—engaging in sexual intercourse without disclosing his HIV-positive status to his partners—did not amount to sexual assault under the UCMJ. *Forbes*, 77 M.J. at 768. He also argued that, even if Article 120 required affirmative disclosure of HIV-positive status before sexual intercourse, the statute was void as unconstitutionally vague because no reasonable person could determine what information they had to disclose to a sexual partner to avoid criminal sanction. *Id.* at 773-74. Notably, Forbes did not appeal his Article 134 conviction of infected sexual battery under Virginia law as assimilated into the UCMJ. He also did not appeal his Article 107 conviction of making a false official statement.

The NMCCA affirmed his convictions. It acknowledged that Forbes's Article 120 claim presented an issue of first impression because no servicemember had previously been convicted of sexual assault under Article 120 (as opposed to assault under Article 128) for failing to inform a partner of his HIV-positive status. 77 M.J. at 769. It upheld Forbes's conviction based on Article 120's definitions of sexual assault as "commit[ting] a sexual act upon another person by . . . causing bodily harm to that other person," 10 U.S.C. § 920(b)(1) (2012), and "bodily harm" as "any offensive touching of another, however slight, including any

nonconsensual sexual act." *Id.* § 920(g)(3). Under military precedent interpreting Article 128, "an HIV-positive service member commits an 'offensive touching' when he performs a sexual act on a partner without informing the partner of his HIV-status," because a person's consent is ineffective if that person's sexual partner has failed to disclose his HIV-positive status. *Forbes*, 77 M.J. at 773 (quoting *United States v. Gutierrez*, 74 M.J. 61, 68 (C.A.A.F. 2015)). Accordingly, the NMCCA held that the specifications describing Forbes's conduct stated an offense under Article 120. *Id.* That court also rejected Forbes's argument that Article 120 was unconstitutionally vague, reasoning that statutory text and decades of military precedent put Forbes on reasonable notice that service members may not engage in sexual intercourse without disclosing their HIV-positive status. *Id.*

Forbes appealed that decision to the Court of Appeals for the Armed Forces (CAAF), which affirmed. The CAAF endorsed the NMCCA's reasoning, holding that, "consistent with Article 120(b)(1)(B) . . . [Forbes] committed a sexual assault each time he had sexual intercourse with one of the victims without first informing her of his HIV status and thereby lawfully obtaining her consent to the intercourse." *United States v. Forbes*, 78 M.J. 279, 281 (C.A.A.F. 2019). It denied Forbes's motion for reconsideration. *See United States v. Forbes*, 78 M.J. 374 (C.A.A.F. 2019).

Years later, Forbes—now on supervised release—petitioned the U.S. District Court for the District of Columbia under 28 U.S.C. § 2241 for a writ of habeas corpus against the Secretary of the Navy and the President of the Naval Clemency and Parole Board. *Forbes v. Del Toro,* No. 21-cv-2175, 2022 WL 17475402, at *1 (D.D.C. Dec. 5, 2022). Forbes argued that the district court should vacate his Article 120 and Article 134 convictions because the military courts committed several

"jurisdictional" errors. *Id.* at \*4. In his view, the court-martial lacked subject matter jurisdiction to hear the Article 120 charge against him because the facts in the specification failed to support criminal liability under the UCMJ. *Id.*

Forbes's habeas petition also argued for the first time that the court-martial lacked subject matter jurisdiction to hear the Article 134 charge against him because the Assimilative Crimes Act did not assimilate the Virginia infected battery statute into federal law and that, even if it did, prosecuting that offense would run afoul of the "preemption doctrine" of the UCMJ. *Id.* at \*5 (quotation omitted). Forbes also raised a new argument that the military courts' interpretation of Article 120 amounted to an *ex post facto* expansion of criminal liability that violated Forbes's constitutional right to due process. *Id.*

The district court held that Forbes's Article 120 challenge was not jurisdictional—so not subject to *de novo* review— because "the objection that an indictment does not charge a crime . . . goes only to the merits of the case," not to the military court's jurisdiction. *Id.* at \*4 (internal alterations and citation omitted). It held that the military courts "thoroughly evaluated Forbes's arguments" and thus gave "full and fair consideration" to his claims. *Id.* at \*3-4. Similarly, it rejected Forbes's claim that he raised a jurisdictional challenge to his Article 134 conviction, given that he argued only that the facts in the specification failed to amount to the offense charged under the UCMJ. *Id.* at \*5. And, because Forbes failed to challenge the Article 134 conviction or to assert his *ex post facto* constitutional claim in the military courts, the district court held he procedurally defaulted both challenges. *Id*.

Forbes timely appealed. We have jurisdiction to hear his appeal under 28 U.S.C. § 1291.

8

## II.

In reviewing a district court's denial of a habeas petition, we review its legal conclusions *de novo*. *Howard v. Caufield*, 765 F.3d 1, 6 (D.C. Cir. 2014). But in reviewing non-jurisdictional challenges to military-court convictions, "'[i]t is the limited function of the civil courts to determine whether the military ha[s] given fair consideration' to each claim raised by petitioners." *U.S. ex rel. New v. Rumsfeld*, 448 F.3d 403, 407 (D.C. Cir. 2006) (quoting *Burns v. Wilson*, 346 U.S. 137, 144 (1953) (plurality opinion)). When the military courts have fully and fairly considered those claims, "it is not the duty of the civil courts . . . to re-examine and reweigh each item of evidence." *Burns*, 346 U.S. at 144. In considering a challenge to a court-martial, we also apply the same forfeiture rules as apply to federal habeas challenges to state court convictions, which, absent a showing of cause and prejudice, "bar claims raised for the first time during a collateral attack on a court-martial." *Kendall v. Army Bd. for Corr. of Mil. Records*, 996 F.2d 362, 366 (D.C. Cir. 1993).

## III.

On appeal, Forbes contends the district court committed three reversible errors. First, he asserts the court failed to properly characterize his statutory challenge to his Article 120 conviction as jurisdictional and so failed to review it *de novo*. Second, he argues the district court made the same error in characterizing his Article 134 challenge as non-jurisdictional and so holding it procedurally defaulted. Third, he contends the district court erred in applying procedural default to his *ex post facto* constitutional challenge to his Article 120 conviction because, he asserts, he in fact raised it below.

None of those arguments persuades. Each of Forbes's assertedly jurisdictional claims is accurately viewed as a challenge to whether the facts in the specification make out an offense under the UCMJ. Those are challenges to the merits of his conviction, not to the jurisdiction of the court-martial. Accordingly, we apply our standard procedural default rule, and we review preserved claims only to ensure the military courts fully considered them. Our review thus proceeds no further than to recognize that Forbes procedurally defaulted his *ex post facto* challenge to his Article 120 conviction as well as his current challenge to his Article 134 conviction by failing to preserve them in the military courts, and that the military courts gave full and fair consideration to Forbes's preserved statutory challenge to his Article 120 convictions. We therefore affirm the judgment of the district court.

**A.**

Federal courts have subject matter jurisdiction to adjudicate a criminal case so long as "an indictment or information alleges the violation of a crime set out . . . in one of the . . . statutes defining federal crimes." *United States v. Jabr*, 4 F.4th 97, 102 (D.C. Cir. 2021) (quoting *United States v. Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014)). Put differently, "[t]he jurisdictional inquiry . . . asks only whether the information alleges the violation of a federal crime, not whether the facts it alleges in fact constitute such a violation." *Id.* Even if the defendant argues that "the charging instrument does not charge all the elements of the offense," a defect on that front "do[es] not deprive a district court of jurisdiction." *Id.* (internal quotation marks and citation omitted). Instead, it "goes only to the merits of the case." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (citation omitted).

That is why we held in *Jabr* that an information's claim of a violation of 18 U.S.C. § 1752 "suffice[d] to substantiate the district court's jurisdiction" despite the defendant's contention that the conduct alleged in the information did not constitute a federal offense. 4 F.4th at 102. Those principles apply to the military courts along with one additional jurisdictional requirement: A military court can consider a court-martial only if the accused "was a member of the Armed Services at the time of the offense charged." *Solorio v. United States*, 483 U.S. 435, 451 (1987); *see also United States v. Humphries*, 71 M.J. 209, 213 (C.A.A.F. 2012) (noting, consistently with *Cotton*, the "nonjurisdictional status of defective specifications").

In sum, a military court has subject matter jurisdiction to hear a criminal case so long as: (1) the defendant was a member of the military at the time of the offense charged; and (2) the military set out a charge identifying the article of the UCMJ the defendant is accused of violating. Both requirements are met here: Forbes was serving in the Navy at the time of the offenses and the Navy charged him with violations of Articles 120 and 134 of the UCMJ. Accordingly, the court-martial had subject matter jurisdiction to adjudicate those charges.

Forbes nevertheless contends that the court-martial lacked subject matter jurisdiction over the sexual assault charges against him because the underlying specification was "based upon a theory of liability not contained within the UCMJ." Appellant's Br. 12. In his view, Congress did not intend a service member's failure to disclose his minimally contagious HIV-positive status to vitiate his partner's informed consent. He accordingly asserts that otherwise-consensual sexual intercourse under those conditions does not constitute "offensive touching" causing "bodily harm" within the meaning of Article 120. Appellant's Br. 16-18. But those arguments confirm that Forbes's challenge to the military

courts' decision boils down to whether the facts in the specification support the "bodily harm" element of Article 120 sexual assault. That dispute over the adequacy of the specification to state an element of the offense goes to the merits of Forbes's case; it "do[es] not deprive a . . . court of jurisdiction" to hear it. *Jabr*, 4 F.4th at 102.

Because Forbes's challenge to his Article 120 conviction is nonjurisdictional, we need not determine the standard of review that would apply to a jurisdictional challenge—a matter on which the parties disagree. Instead, we fulfill our limited function as a federal civil court reviewing a court-martial, which is to determine whether the "military ha[s] given fair consideration to [the service member's] . . . claim[]." *Burns*, 346 U.S. at 144. As to the Article 120 convictions, the district court held that the military courts "fully and fairly considered Forbes's arguments about bodily harm and offensive contact." *Forbes*, 2022 WL 17475402, at *5. We agree.

Forbes first appealed his conviction to the NMCCA. That court described Forbes's case as one of first impression because no service member had previously been convicted of sexual assault under Article 120 for failing to inform a sexual partner of his HIV-positive status before engaging in otherwise-consensual sexual acts. There was, however, "much precedent for convicting service members for similar conduct" under the general assault provision (*i.e.*, not limited to sexual assault), UCMJ Article 128, which punishes aggravated assault and the lesser included offense of assault. *Forbes*, 77 M.J. at 769-70 (citing *United States v. Gutierrez*, 74 M.J. 61, 68 (C.A.A.F. 2015); *United States v. Upham*, 66 M.J. 83, 87 (C.A.A.F. 2008)).

Historically, if a service member engaged in sexual intercourse without disclosing their HIV-positive status, the

military charged the conduct as aggravated assault. Under Article 128, a person is guilty of aggravated assault if they "commit[] an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm." 10 U.S.C. § 928 (2012). In the context of a service member's failure to disclose their HIV-positive status to a prospective partner in otherwise consensual sexual activity, the military courts interpreted the Article 128 requirement of "means . . . likely to produce" grievous harm to gauge the "likelihood of the virus causing death or serious bodily harm *if* it invades the victim's body." *United States v. Joseph*, 37 M.J. 392, 397 (C.M.A. 1993). With the focus on the potential harm from the virus once contracted, the court held that "[t]he probability of infection need only be 'more than merely a fanciful, speculative, or remote possibility'" to support conviction of aggravated assault under Article 128. *Id.* (quoting *United States v. Johnson*, 30 M.J. 53, 57 (C.M.A. 1990)).

More than two decades later, the CAAF in *Gutierrez* overruled *Joseph*, noting that its contingent likely-harm analysis was *sui generis* to HIV-related assault cases and inconsistent with the plain text of Article 128. *See* 74 M.J. at 65-66. The *Gutierrez* court held that "'likely' must mean the same thing in an Article 128, UCMJ, prosecution for an aggravated assault involving HIV transmission as it does in any other prosecution under the statute," and that "in plain English" the provision required proof that "the charged conduct was 'likely' to bring about grievous bodily harm." *Id*. at 66. The inquiry thus properly trained on whether "grievous bodily harm [is] the likely consequence of [defendant's] sexual activity." *Id.* The relevant probability in the case before it was not the risk that someone who contracted HIV from the defendant would suffer grievous bodily injury, but the risk that defendant's conduct would transmit HIV to a sexual partner in

the first place. Faced with a defendant whose conduct exposed sexual partners to "at most . . . a 1-in-500 chance to transmit HIV," the CAAF overturned Gutierrez's aggravated assault conviction. *Id.* at 63.

Having determined that the evidence against Gutierrez was insufficient to establish the grievous harm element of aggravated assault, the CAAF affirmed a conviction for the lesser included Article 128 offense of assault. Ordinary assault under Article 128 requires only that the accused did "bodily harm" to the victim, which the statute defines as "any offensive touching of another, however slight." *Id.* at 68 (internal quotation marks and citation omitted). The CAAF reasoned that Gutierrez's failure to disclose his HIV-positive status meant his partners could not provide meaningful informed consent, which made the sexual intercourse an offensive touching. *Id.*

In Forbes's case, the NMCCA applied that same reasoning, developed in Article 128 assault cases, to affirm his conviction of sexual assault under Article 120. Article 120 defined "sexual assault" as "commit[ting] a sexual act upon another person by causing bodily harm to that other person." 10 U.S.C. § 920(b)(1)(B) (2012). The NMCCA noted that "bodily harm" means "offensive touching" under Article 120 as it does under Article 128, making the CAAF's holding in *Gutierrez* binding on the military judge who accepted Forbes's guilty plea:

> Both [non-aggravated assault under Article 128 and sexual assault under Article 120] require an "offensive touching," and the CAAF has concluded that sexual intercourse without informing your partner that you are HIV-positive constitutes an "offensive touching." Thus, the military judge was bound by the CAAF's

> ruling in *Gutierrez*, and was not therefore laboring under an erroneous view of the law when she accepted the appellant's plea based upon his admission that he had sexual intercourse with three women without telling them that he was HIV-positive.

*Forbes*, 77 M.J. at 772. The NMCCA upheld Forbes's Article 120 sexual assault conviction as consistent with (and indeed, required by) *Guttierez*. *See id.* at 771-72.

On Forbes's further appeal, the CAAF applied *Gutierrez* and affirmed. It recognized that the military courts "have long held . . . that failure to disclose one's HIV-positive status before engaging in sexual activity constitutes an offensive touching." *Forbes*, 78 M.J. at 281. And it explained that, under its precedent, "failure to inform the victims of the HIV-positive status . . . vitiates meaningful consent and causes the touching to be offensive," because without that information, consent cannot be "informed." *Id.*

Forbes raised two main counterarguments before the military courts. First, he argued that he could not be convicted of sexual assault "because his HIV-positive status did not cause any of the victims to engage in sexual intercourse with him." *Id.* But as the CAAF explained, that argument misstated the relevant legal standard—under *Gutierrez*, the sexual intercourse caused his partners bodily harm (*i.e.*, constituted an offensive touching) because they could not give meaningful, informed consent without knowledge of his HIV-status. *Id.* Second, he asserted that the touching, which in his view could only be "offensive" if there was "exposure, however slight, to HIV," failed to meet the statutory standard because at the time of the sexual encounters, he was adhering to antiretroviral treatment that rendered his HIV nontransmissible. *Forbes*, 77 M.J. at 772-73 (quotation omitted); Appellant's Br. at 7-8;

*United States v. Forbes*, 77 M.J. 765 (N-M Ct. Crim. App. 2018) (No. 18-0304). Again, the court explained that, unlike with aggravated assault, it was not the actual transmission of HIV (or likelihood thereof) that rendered Forbes's touch criminal, but rather his victims' lack of informed consent before engaging in the sexual encounter. *Id.* at 773; *see Forbes*, 78 M.J. at 281 n.4.

The CAAF in *Gutierrez* did not spell out why an HIV viral load diminished to a point at which transmission is extremely unlikely or impossible is treated as material to a sexual partner's consent such that failure to disclose HIV-positive status categorically negates actual agreement to sexual intercourse. Nor has it reconsidered the point. The NMCCA in *United States v. Lewis* acknowledged that "the improvement of treatment regimens over the years has steadily lowered the risk of transmission for those who are HIV-positive," but observed that "it is the prerogative of our superior court, not this one, to determine whether this presents a significant change in circumstances warranting a departure from its prior precedents." 2020 WL 4745289, at *4-*6 (N-M Ct. Crim. App. Aug. 17, 2020) (citing *Forbes*, 78 M.J. at 281, and *Gutierrez*, 74 M.J. at 68) (internal quotation marks and citation omitted). The court in *Lewis* accordingly affirmed convictions for assault and sexual assault based in part on the failure of a service member with "undetectable" viral load to disclose his HIV-positive status to otherwise-consenting sexual partners. *Id.* at *4.

Recent legislative action addresses that aspect of *Gutierrez* going forward. Congress amended the UCMJ sexual assault statute since Forbes's conviction to remove "bodily harm" from its definition, *see* 10 U.S.C. § 920, such that Forbes's specification of conviction is no longer a crime. But that intervening development is not a basis on which we can

overturn Forbes's conviction. We exercise only a "limited function" in reviewing Forbes's conviction. *New*, 448 F.3d at 407 (quotation omitted). The military courts carefully and thoroughly analyzed Forbes's arguments and ultimately rejected them based on precedent that bound them. We therefore affirm the district court's dismissal of his claim.

**B.**

Forbes's assertedly jurisdictional challenge to his conviction under Article 134 of the UCMJ suffers from defects similar to those that defeat his Article 120 challenge. Article 134 expressly permits service members to be subject to courts-martial for "crimes and offenses not capital" that are "not specifically mentioned" in the UCMJ. 10 U.S.C. § 934. That category includes, *inter alia*, "crimes and offenses prohibited by the United States Code." *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018) (quotation omitted). Forbes was charged under that article for a violation of the Assimilative Crimes Act—18 U.S.C. § 13—which has the "basic purpose" of "borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis v. United States*, 523 U.S. 155, 160 (1998). The Assimilative Crimes Act provides that "[w]hoever within" any federal enclave "is guilty of any act . . . which, although not made punishable by any enactment of Congress, would be punishable if committed" within the jurisdiction of the state in which the federal enclave is located "shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). Forbes's assimilated violation was predicated on Virginia's infected sexual battery statute, which, at the time, made it a misdemeanor for "[a]ny person . . . knowing he is infected with HIV" to have "sexual intercourse . . . with another person without having previously disclosed the existence of his infection to the other person." VA. CODE ANN. § 18.2-67.4:1(B) (2012).

Before the district court, Forbes argued for the first time that the Assimilative Crimes Act does not assimilate Virginia's infected sexual battery statute because Congress enacted a different assault statute—18 U.S.C. § 113—to punish similar conduct. Alternatively, he argued that even if the Act assimilated the Virginia statute, prosecution under Article 134 is improper because it violates the "preemption doctrine" of the UCMJ. *Forbes*, 2022 WL 17475402, at *5 (quotation omitted). Under that doctrine, the military may not rely on Article 134 to prosecute a service member when doing so would lessen its evidentiary burden compared to proving a similar UCMJ offense. *See Wheeler*, 77 M.J. at 293. Forbes claims that using the Virginia statute lessened the Navy's evidentiary burden compared to Article 120 because Virginia law does not require proof of "bodily harm." The district court held those arguments were nonjurisdictional and procedurally defaulted because, as Forbes conceded, he never raised them below. 2022 WL 17475402, at *5.

That conclusion is correct. As discussed in Part III.A, *supra*, the jurisdictional inquiry for military courts trying criminal cases is straightforward: Forbes was a member of the Navy at the time of the offense and the Navy charged him under Article 134. The military courts then had subject matter jurisdiction to hear the Article 134 claim. Forbes contends that his assimilation and preemption arguments are jurisdictional, but we conclude they are merits defenses because they challenge the sufficiency of the conduct described in the specification to establish the elements of the crime.

Consider first Forbes's assimilation argument. One of the elements required for an Article 134 conviction is that there be a "crime[] and offense[] not capital" for the court-martial to punish, which in Forbes's case was the violation of the provision of the Virginia code that federal law assimilates. 10

U.S.C. § 934. Forbes's argument is that this element is not met because (1) the Assimilative Crimes Act did not assimilate the Virginia statute and therefore (2) his conduct did not violate the Act. But once again, even if either or both of his assertions were true, that would establish only a defect in the sufficiency of the specification, which "do[es] not deprive a . . . court of jurisdiction." *Jabr*, 4 F.4th at 102.

That conclusion is consistent with the Supreme Court's decision in *Lewis*. *Lewis* affirmed the Fifth Circuit's decision that the Assimilative Crimes Act did not assimilate the child victim provision of Louisiana's first-degree murder statute because the federal murder statute governed the crime at issue; the Louisiana statute was inapplicable because the wrongful "act . . . [was] made punishable by [an] enactment of Congress." 18 U.S.C. § 13(a). But the Court did not dismiss the criminal case against the defendant for lack of subject matter jurisdiction. *Lewis*, 523 U.S. at 172-73. Instead, it left the conviction undisturbed on the ground that the jury, in convicting the defendant of the assimilated charge, had necessarily found all the requisite elements of federal second-degree murder. The case was remanded to the district court for resentencing only because the Louisiana charge mandated life imprisonment whereas the federal second-degree murder statute did not.

Forbes resists *Lewis*'s implication that assimilation issues are nonjurisdictional by arguing that its holding applies "[o]nly in cases where an improperly assimilated offense is the same, element for element, with an offense recognized in the United States Code." Appellant's Br. 25 (citing *Lewis*, 523 U.S. at 173). But that is incorrect. The state and federal offenses at issue in *Lewis* had different statutory elements. *See Lewis*, 523 U.S. at 166-68.

Other circuits that have considered the issue since *Lewis* are in accord that improper assimilation is nonjurisdictional. Most recently, the Tenth Circuit rejected appellant's characterization of his claim that federal law improperly assimilated a provision of Colorado law as jurisdictional. Such a challenge, the court explained, is not jurisdictional because it "resembles a challenge to an indictment." *United States v. Twitty*, 859 F. App'x 310, 313 (10th Cir. 2021). The court pointed out the general ineffectiveness of claiming that improper assimilation is a jurisdictional defect: A meritorious argument that an analogous federal law punishes approximately the same conduct as the putatively assimilated state offense would likely succeed in establishing federal jurisdiction to hear the case under the analogous federal law. "So jurisdictionally, whether the government charged the offense under the [Assimilative Crimes Act] or another provision of federal law [does] not matter." *Id.*

The Third and Fifth Circuits have similarly rejected the notion that improper assimilation is a jurisdictional defect. *See United States v. Hall*, 979 F.2d 320, 323 (3d Cir. 1992) (analogizing improper assimilation to an incorrect statutory citation in an indictment); *United States v. Key*, 599 F.3d 469, 476-77 (5th Cir. 2010) (reviewing an improper assimilation claim for plain error because it was not raised below and is nonjurisdictional). The federal appellate decisions suggesting otherwise predate *Lewis* and lack explanation. *See United States v. Perez*, 956 F.2d 1098, 1101-02 (11th Cir. 1992) (referring to improper assimilation as an issue of subject matter jurisdiction); *United States v. Devenport*, 131 F.3d 604, 605 (7th Cir. 1997); *but see United States v. Yates*, 211 F. App'x 925, 927-28 (11th Cir. 2006) (holding, without explanation,

that the district court lacked subject matter jurisdiction due to improper assimilation, but remanding for resentencing).[3]

We follow the Supreme Court in *Lewis*, in line with the Third, Fifth, and Tenth Circuits, to hold that Forbes's assimilation claim is not jurisdictional and is procedurally defaulted for failure to raise it before the military courts.

Forbes also fails to persuade us that his preemption argument is jurisdictional. He invokes preemption to argue that the Navy impermissibly lightened its evidentiary burden by using Article 134 instead of Article 120 to prosecute him for one of the charges of sexual assault. He points out that Virginia's infected sexual battery statute, unlike Article 120, does not require proof that he caused his victim "bodily harm." The problem with his position is that the military courts held that Forbes caused bodily harm by engaging in precisely the

---

[3] Forbes also relies on decisions from the military courts suggesting that assimilation and preemption arguments are jurisdictional, but they fail to persuade. The leading case, *United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F. 1999), predates *Cotton* and held without elaboration that an improper assimilation was a jurisdictional defect. Other, unpublished military court decisions rely on *Robbins. See, e.g.*, *United States v. Wainionpa*, No. ARMY 20210436, 2023 WL 355063, at *2 (Army Ct. Crim. App. Jan. 20, 2023); *United States v. Dominguez-Sandoval,* No. ACM 40084, 2022 WL 987041, at *6 (A.F. Ct. Crim. App. Mar. 31, 2022). None of those decisions acknowledges that the CAAF has recognized since *Robbins* that the "jurisdictional" label is apposite only to matters that "govern[] a court's adjudicatory capacity." *Humphries*, 71 M.J. at 213 (citation omitted). The CAAF's approach in *Humphries* aligns with that of the Supreme Court, which in recent years has moved from an "elastic concept of jurisdiction" to "what the term 'jurisdiction' means today," that is, "a court's power to hear a case." *Cotton*, 535 U.S. at 630 (citation omitted); *see also Wilkins v. United States*, 598 U.S. 152, 159-60 (2023).

same conduct the Virginia statute criminalized—having sexual intercourse without disclosing his HIV-positive status. Forbes's preemption argument, then, rests on an implicit denial that his conduct caused bodily harm. But that is just a challenge to the sufficiency of the specification to describe an element of the alleged criminal conduct, which, again, does not divest the military court of jurisdiction to hear the case. *See Jabr*, 4 F.4th at 102. We therefore hold that Forbes defaulted this non-jurisdictional argument by failing to raise it before the military courts.

## C.

Finally, we turn back to Forbes's conviction for sexual assault under Article 120 to consider his constitutional *ex post facto* challenge. Before the district court, Forbes argued that the military courts' interpretation of Article 120 unconstitutionally expanded the criminal consequences of his completed conduct because no prior case had held that a failure to disclose HIV-positive status before engaging in intercourse constituted sexual assault under that provision. The district court held that, to the extent Forbes was attempting to raise a new argument beyond his statutory challenge, he procedurally defaulted it by failing to raise it before the military courts. Absent a showing of cause and prejudice (which Forbes did not attempt to make), his *ex post facto* challenge is waived because federal courts "apply identical waiver rules to bar claims raised for the first time during a collateral attack on a court-martial" as we apply in habeas. *Kendall*, 996 F.2d at 366. Forbes does not contend this argument is jurisdictional, and we agree with the district court that Forbes failed to raise it below.

Forbes raised a void-for-vagueness constitutional claim before the NMCCA—that if Article 120 requires disclosing HIV-positive status, it is "unconstitutionally vague" because

there is "no way for a person of common intelligence to determine what exactly they should disclose to a sexual partner" to avoid criminal liability for sexual assault. *Forbes*, 77 M.J. at 773. That court rejected his argument, concluding that decades of precedent and the statutory text of Articles 120 and 128 put Forbes on fair notice that his conduct was prohibited. Forbes did not raise the void-for-vagueness claim or any other constitutional argument in his appeal to the CAAF nor does he press it here, yet he now argues that he preserved an *ex post facto* claim because his motion for reconsideration described the CAAF's decision as "vast[ly] broadening . . . criminal liability." Forbes Mot. for Recons. 3 (J.A. 124).

Setting aside the question whether that cursory description can fairly be read to refer to an *ex post facto* claim, Forbes raised it too late to preserve it on appeal. A motion for reconsideration "may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment" and is not a "vehicle to present a new legal theory that was available prior to judgment." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (internal quotation marks and citations omitted). We regularly hold that parties forfeit arguments they raise for the first time in a motion for reconsideration when they could have raised them earlier. *See, e.g.*, *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012).

Forbes's response—that it was impossible for him to raise his *ex post facto* claim until after the CAAF issued its judgment—is meritless. The Navy announced its theory of liability under Article 120 before Forbes's court-martial and it has remained consistent over the course of Forbes's prosecution. He could have raised this argument at any time during or after his trial. We therefore hold that he procedurally defaulted the claim by not raising it below.

But even if Forbes had preserved this claim, we would dismiss it for the same reason the NMCCA dismissed his void-for-vagueness claim.  A judicial interpretation of a criminal statute operates as an unconstitutional *ex post facto* law if "[it] is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) (internal quotation marks and citation omitted).  As the NMCCA explained, decades of precedent under Article 128 made clear that engaging in sexual intercourse without disclosing one's HIV-positive status constitutes an "offensive touching" causing "bodily harm."  That Forbes's case was the first to apply that logic to Article 120 does not render the military courts' interpretation "unexpected and indefensible." *Id.*

\*\*\*

A court-martial convicted Lamar Forbes based on an admittedly novel application of the sexual assault article of the Uniform Code of Military Justice, but it did so based on an established interpretation of the same wording in a parallel provision.  The military courts gave careful consideration to Forbes's arguments and rejected them as contrary to the text of the relevant UCMJ articles and military precedent.  Sitting as a civil court reviewing Forbes's conviction, we owe significant deference to the military courts' judgment and must apply standard procedural default rules.  Forbes cannot now recast arguments he never made below as jurisdictional to have us second-guess the military courts' decisions.  We therefore affirm the judgment of the district court.

*So ordered.*